INDUSTRIAL AID FOR THE BLIND, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11387–77X.     Filed October 15, 1979.

*S. S. Sanger*, for the petitioner.
*Virginia C. Schmid*, for the respondent.

OPINION

WILBUR, *Judge:* Respondent determined that petitioner does not qualify for exemption for Federal income tax under section 501(c)(3), I.R.C. 1954.[1] Petitioner challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. The issue presented to us is whether petitioner is operated exclusively for charitable purposes within the meaning of section 501(c)(3) of the Code.

This case was submitted for decision on the stipulated administrative record under Rule 122, Tax Court Rules of Practice and Procedure. The stipulated administrative record is incorporated herein by this reference. The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding.

Petitioner Industrial Aid for the the Blind is a Wisconsin nonstock corporation whose principal place of business has at all times relevant herein been 3603 West Vliet Street, Milwaukee, Wis.

Petitioner was organized in 1941 as a successor to Wisconsin Blind Products, Inc., and was granted exemption from Federal income tax on December 30, 1941, under Internal Revenue Code of 1939, section 101(6) (the statutory predecessor of sections 501(a) and 501(c)(3)).

Petitioner was organized for the following purposes:

To engage in the business of purchasing articles and commodities heretofore or hereafter produced, completed, made, finished, manufactured or created at the Wisconsin Workshop for the Blind, or by any blind workman, and to sell such articles and commodities at retail;

To purchase fixtures, equipment and other property, to engage and employ supervisiry [sic], administrative, clerical, sales and other help, to rent, lease or otherwise acquire offices, salesrooms, warehouses and other land, buildings or

---

[1]All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

space, and to incur such other obligations, all as may be expedient in the conduct of its business of purchasing and selling such articles and commodities;

To donate to the Wisconsin Workshop for the Blind, or to some other organization for the blind, in the event that the said Wisconsin Workshop for the Blind shall cease to exist or shall cease to be an organization for the blind, or in the event that the State Department of Public Welfare of Wisconsin shall designate some other beneficiary in the stead of the Wisconsin Workshop for the Blind;

(a) Each year seventy-five per cent (75%) of the net income received by the corporation in the conduct of its business of purchasing and selling such articles and commodities; the remaining twenty-five per cent (25%) is also to be so donated each year, whensoever the corporation has accumulated a surplus sufficient to enable it to carry on its business expeditiously.

(b) Upon discontinuance of said business, or upon sale thereof, or upon dissolution of this corporation, all of the assets of this corporation which it shall own after payment of all its obligations.

To perform or do such other acts, permitted by law, as will enable this corporation to increase the donations to the Wisconsin Workshop for the Blind, or such other beneficiary as hereinbefore provided.

Petitioner is the sole authorized sales agency for the Wisconsin Workshop for the Blind (hereinafter WWB), an agency of the Wisconsin State Department of Public Welfare, Division of Public Assistance. WWB employs visually handicapped persons in the production of various articles such as rugs, brooms, and mops, through a shelter-employment arrangement.

Petitioner purchases the articles made by WWB, and sells them either direct to consumers, on a door-to-door basis, or to the Federal Government. Petitioner also purchases and sells the products of 19 other workshops for the visually handicapped located throughout the United States, as well as some goods manufactured in the homes of blind individuals.

WWB and the other 19 workshops are, along with some 62 other such workshops, affiliated with National Industries for the Blind (hereinafter NIB), an organization described in section 501(c)(3). NIB was established in 1939 as an outgrowth of congressional enactment of the Wagner-O'Day Act in 1938. NIB is responsible for sales of all products made by the blind to the Federal Government and acts as a liaison between its affiliates and the President's committee on purchases of products made by the blind.

During the period 1966–68, petitioner purchased 18 percent of its merchandise from WWB, 20 percent from a related organization, Industries for the Blind, also of Milwaukee, Wis., and 62 percent from the other 18 workshops located throughout the

country. Net profits from all sales are in part distributed to visually handicapped persons employed at WWB and in part accumulated for future needs.

The distributions by petitioner of its net profits to workers at WWB are made twice a year, by way of a "bonus check" to qualified workers. Qualified workers are chosen by WWB on the basis of their having worked a minimum number of days during the preceding period. An equal amount is paid to each recipient worker. No profit distributions are made to any individuals other than workers at WWB.

The following table shows petitioner's sales, profits, distributions, accumulations, and profit margin for each of the years 1966–68:

| | 1966 | 1967 | 1968 |
|---|---|---|---|
| Gross receipts | $191,921.66 | $177,433.04 | $169,923.70 |
| Cost of goods sold | 128,414.90 | 115,936.49 | 111,518.70 |
| Gross profit | 63,506.76 | 61,496.55 | 58,405.00 |
| Operating expenses | 57,582.29 | 54,109.83 | 51,329.61 |
| Net profit | 5,924.47 | 7,386.72 | 7,075.39 |
| Amount paid to WWB workers | 5,858.41 | 4,272.79 | 3,519.09 |
| Amount accumulated[1] | 66.06 | 3,113.93 | 3,556.30 |
| Gross profit margin $\frac{\text{Gross profit}}{\text{Gross receipts}}$ | 33.1% | 34.7% | 34.4% |
| Net profit margin $\frac{\text{Net profit}}{\text{Gross receipts}}$ | 3.1% | 4.2% | 4.2% |

[1]The accumulated funds were in each year added to an account entitled "Accumulated Earnings, Workshop Funds (For Distribution to Blind Workers)." The name of the account was altered, in 1968, to "Accumulated Earnings, Workshop Fund (For Distribution to Blind Workers and Sales Development)."

The petitioner contends that its exempt status should not be revoked because it is performing exclusively charitable functions principally through the marketing of products made by the blind, and incidentally by issuing small bonus checks to blind workers.

Respondent states his position in his reply brief as follows:

respondent's determination, as set forth in the final adverse determination letter and in respondent's opening brief herein, is based on the determination that for the years 1966 and following petitioner has been operated for the

primary purpose of carrying on a trade or business at a profit, and thus petitioner is not operated within the definition of section 501(c)(3).

We agree with petitioner.

Petitioner was organized in 1941 to purchase and sell the products manufactured at the Wisconsin Workshop for the Blind (WWB). Seventy-five percent of any profits resulting from petitioner's activities is distributed to WWB, as is the remaining 25 percent after a "sufficient" operating reserve is insured. Petitioner was granted exemption from taxation under section 101(6) of the Internal Revenue Code of 1939 (now secs. 501(a) and 501(c)(3)), on December 30, 1941.

During the years 1966–68, petitioner purchased and sold products manufactured at 19 additional workshops located throughout the country as well as products of WWB. WWB is an agency of the Wisconsin State Department of Public Welfare. WWB and the other 19 workshops are affiliated with National Industries for the Blind, a sec. 501(c)(3) organization. NIB is responsible for sales of all products made by the blind to the Federal Government, acting as a liaison between its affiliates and the President's committee on purchase of products made by the blind.

The small net profits yielded by sales, to the extent not needed for an operating contingency, are distributed to individual workers at WWB, in the form of twice-yearly salary bonus checks. WWB selects the individual recipients based on length of time worked at WWB during the preceding period; each selected worker receives the same dollar amount. During 1966–68, petitioner's sales declined somewhat. The net profit margin was 3.1 percent for 1966, 4.2 percent for 1967, and 4.2 percent for 1968.

Section 501(a) provides, in part, for the exemption from Federal income tax of organizations described in section 501(c).

Section 501(c)(3) describes "Corporations * * * organized and operated exclusively for * * * charitable * * * purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *."

Section 1.501(c)(3)–1(a), Income Tax Regs., provides that in order to be exempt as an organization described in section 501(c)(3), the organization must be one that is both organized and operated exclusively for one or more of the purposes

specified in that section. An organization that fails to meet either the organizational or the operational test is not exempt.

Section 1.501(c)(3)–1(d), Income Tax Regs., provides that the term "charitable" is used in section 501(c)(3) in its generally accepted legal sense and is, therefore, not to be construed as limited by the separate enumeration in section 501(c)(3) of other tax exempt purposes which may fall within the broad outlines of "charity" as developed by judicial decisions. Relief of the poor and distressed or the underprivileged and lessening of the burdens of government are specifically included as charitable purposes.

Section 1.501(c)(3)–1(e), Income Tax Regs., provides, in part, that an organization may meet the requirements of section 501(c)(3) although it operates a trade or business as a substantial part of its activities, if the operation of such trade or business is in furtherance of the organization's exempt purpose or purposes, and if the organization is not organized or operated for the primary purpose of carrying on an unrelated trade or business.

We begin by emphasizing "that the presence of profitmaking activities is not per se a bar to qualification of an organization as exempt if the activities further or accomplish an exempt purpose." *Aid to Artisans, Inc. v. Commissioner,* 71 T.C. 202, 211 (1978). Accord, *Pulpit Resource v. Commissioner,* 70 T.C. 594, 611 (1978); *Edward Orton, Jr., Ceramic Foundation v. Commissioner,* 56 T.C. 147, 162–164 (1971). We hold that petitioner's principal purpose is to provide employment for blind individuals, alleviating the hardship these handicapped individuals experience in securing and holding regular employment, and incidentally to provide small bonuses to blind individuals when and if profits accrue in excess of operating needs.

Petitioner is the sole operating agency for the WWB (an agency of the Wisconsin State Department of Public Welfare), and is affiliated with NIB, which is responsible for the sale of all products made by the blind to the Federal Government. Clearly, petitioner has the same purpose as WWB and NIB, and both of these organizations are within the purview of section 501(c)(3). Petitioner and its affiliated organizations are all organized and operated to advance the welfare of the blind. The division of responsibilities between them is based on convenience and does not negate the exempt purpose that they share in common.

We believe that handling the sales of products made by the

blind for organizations admittedly performing an exempt purpose, is an exempt function itself. The relatively small profit generated is incidental to the principal purpose of providing employment opportunities for the blind, and even that portion of the small profits yielded is distributed to WWB to advance its exempt purposes.[2] We believe that on the entire record before us, petitioner is organized and operated for charitable purposes as described by section 501(c)(3).

Although on reply brief respondent disclaims any reliance on section 502, he loosely characterizes petitioner as a "feeder organization" throughout his brief and relies on *Veterans Foundation v. United States*, 281 F.2d 912 (10th Cir. 1960).

Section 502,[3] along with the tax on unrelated business income provided by sections 511–513, was added to the Code by the Revenue Act of 1950.[4] In recommending these complementary provisions dealing with business activities (not in themselves exempt aside from the production of income used for charitable purposes), the Treasury Department described their purpose as follows:

Under the recommendation, if such activities are conducted by the exempt organization itself, the exemption of the organization would not be disturbed, but such business income would be segregated and subjected to tax. If a separate organization conducts those activities for the exempt institution, the entire income of the separate organization would be taxed.[5]

---

[2]Assuming arguendo that petitioner had a dual purpose, to alleviate the problems of visually handicapped individuals and to engage in business for a profit, the former purpose is primary. And in any event, the sale of products made by blind individuals "was an integral part of and incidental to petitioner's avowed [charitable] purpose" and may be considered a part of the charitable purpose or objective. *Pulpit Resource v. Commissioner*, 70 T.C. 594, 611 (1978).

[3]Sec. 502 provides:

SEC. 502. FEEDER ORGANIZATIONS.

  (a) GENERAL RULE.—An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt from taxation under section 501 on the ground that all of its profits are payable to one or more organizations exempt from taxation under section 501.

  (b) SPECIAL RULE.—For purposes of this section, the term "trade or business" shall not include—

    (1) the deriving of rents which would be excluded under section 512(b)(3), if section 512 applied to the organization,

    (2) any trade or business in which substantially all the work in carrying on such trade or business is performed for the organization without compensation, or

    (3) any trade or business which is the selling of merchandise, substantially all of which has been received by the organization as gifts or contributions.

[4]Sec. 301, Revenue Act of 1950, ch. 994, 64 Stat. 906, 947, 953.

[5]Hearings Before the House Ways and Means Comm. on Revenue Revision of 1950, 81st Cong., 2d Sess. (Part 1) 165 (1950) (Statement of Mr. Vance Kirby, Tax Legislative Counsel of the Treasury Department). This dual objective was retained throughout legislative consideration of the proposal.

The feeder provision (sec. 502) and the tax on unrelated business income are complementary, providing a two-pronged approach: if the unrelated business is conducted by an otherwise exempt organization, then it is subject to the tax on unrelated business income provided by sections 511–513; if the exempt organization spins off the unrelated organization into a separate entity, that entity is taxable. In the case before us, whether the selling function for blind-manufactured products is performed by WWB itself or by petitioner as a separate organization, it is an exempt activity in and of itself.

For this reason, *Veterans Foundation v. United States, supra,* is inapposite. That case involved a private business consisting of two stores selling used clothing and other used merchandise. The court found that the stores were located in areas containing competing privately owned stores and were operated like any other business. Veterans Foundation purchased this business from one Elison who had operated it as a private business under a contract with the Disabled American Veterans of Utah. Apparently, most of the secondhand merchandise sold was donated. The court found this business was a feeder within the provisions of section 502.

The Tenth Circuit noted that the issue before it "presents a question of fact." The case before us does not involve a business dealing in secondhand merchandise and otherwise unrelated to an exempt purpose aside from the income generated. Petitioner, WWB, NIB, and the other affiliates actually provide jobs for the blind, and the products petitioner sells are those produced by the class of handicapped individuals who benefit from the program. The provision of the work opportunity is the exempt activity, and the sale of the products made is simply an incidental activity whose sole purpose is to provide employment opportunities to blind individuals.

*An appropriate order will be entered.*

See K. Eliasberg, "Charity and Commerce: Section 501(c)(3)—How Much Unrelated Business Activity?" 21 Tax L. Rev. 53, 83 (1965).