J. DAVID GLADSTONE FOUNDATION, RICHARD S. BRAWERMAN, RICHARD D. JONES, AND DAVID ORGELL, TRUSTEES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2964–80X.     Filed August 6, 1981.

*David A. Weinstein* and *Andrew E. Furer*, for the petitioner.
*James M. Eastman* and *Bernard Kornmehl*, for the respondent.

## OPINION

DAWSON, *Judge*: This case was assigned to Special Trial Judge Francis J. Cantrel for the purpose of conducting the hearing and ruling on respondent's motion to dismiss for lack of jurisdiction. After a review of the record, we agree with and adopt his opinion which is set forth below.[1]

---

[1]Since this is a preliminary jurisdictional motion, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure, are not applicable in the present circumstances. This conclusion is based on the authority of the "otherwise provided" language of that Rule.

OPINION OF THE SPECIAL TRIAL JUDGE

CANTREL, *Special Trial Judge*: Petitioner brought an action for declaratory judgment pursuant to section 7428 and Rule 211, Tax Court Rules of Practice and Procedure,[2] on the ground that respondent failed to make a determination with respect to petitioner's continuing classification as a nonprivate foundation as described in section 509(a)(1).

Petitioner is a testamentary trust established under the Will of J. David Gladstone, who died on June 14, 1971. As directed by Mr. Gladstone's will, petitioner was created as a medical research organization for the conduct of research in blood and vascular diseases.

On March 22, 1973, the trustees for petitioner submitted an Application for Recognition of Exemption, Form 1023, to the District Director, Internal Revenue Service, Los Angeles, Calif. The District Director, by letter dated June 7, 1973, as modified by letter dated June 15, 1973, determined that petitioner was an exempt organization under section 501(c)(3) and that petitioner was not a private foundation as described in section 509(a) because it was a medical research organization described in section 170(b)(1)(A)(iii).

On August 4, 1977, upon examination of petitioner's information returns submitted for the taxable years 1974 and 1975, the District Director, by letter to petitioner, proposed to revoke its status under section 509(a)(1) and determine that petitioner was a private foundation as described in section 509(a) and was not an operating foundation described in section 4942(j)(3) for the taxable years 1974 and 1975. Petitioner on September 2, 1977, filed a written protest with the District Director in Los Angeles, appealing and disagreeing with the proposed revocation of exempt status and requesting a conference with respondent's Regional Office. On November 18, 1977, a conference with the Regional Office was held. The Regional Office decided adversely to petitioner by letter dated March 14, 1978. On April 11, 1978, petitioner requested respondent's National Office to review the Regional Office's determination and hold a conference. The National Office accepted petitioner's appeal

---

[2]All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references herein are to the Tax Court Rules of Practice and Procedure.

on July 14, 1978. A conference with the National Office was held on November 20, 1978. Petitioner was notified on January 23, 1980, by the National Office that it had decided the appeal adversely to petitioner and that the case had been remanded to the District Director, Los Angeles, for issuance of a final adverse determination letter. Petitioner has fully cooperated with the respondent throughout the appeal process in timely and expeditiously submitting all required documents in furtherance of its request for determination and in supplying all additional information requested by respondent.

On March 3, 1980, petitioner filed a petition in this Court seeking a declaratory judgment pursuant to section 7428. Therein, petitioner requests the Court to find that petitioner is not a private foundation described in section 509(a) but is an exempt organization described in section 509(a)(1) and section 170(b)(1)(A)(iii). On April 15, 1980, respondent filed a motion to dismiss for lack of jurisdiction, and it is that motion which is presently before the Court for decision.

Subsequent to the filing of the petition in this Court, additional administrative action took place. On March 4, 1980, petitioner sent a letter and additional materials to the District Director in Los Angeles seeking reconsideration of his proposed adverse determination. That request was denied on May 28, 1980, on which date respondent issued a final adverse determination letter which determined that petitioner's private foundation status would be deemed to commence on January 1, 1976. Thereafter, petitioner filed a petition with this Court on August 25, 1980, based upon the final adverse determination letter, which was assigned docket No. 16256–80X.

At the outset, we think it necessary to discuss the effect of the issuance of the final adverse determination letter after the petition for declaratory judgment was filed with this Court. By his argument that an actual controversy did not exist at the time the petition in this case was filed but did mature into an actual controversy upon the issuance of the May 28, 1980, letter, respondent would have us hold that the petition filed in this case is premature. We do not agree with respondent that this case is mooted by the issuance of that final adverse determination letter.

This Court has jurisdiction over declaratory judgment

actions concerning exempt organizations as provided in sections 7442 and 7428. We will discuss hereinafter the jurisdictional requirements of section 7428, which we have found that petitioner has met. We have held in some circumstances that once this Court obtains jurisdiction, events subsequent to the filing of the petition do not divest us of jurisdiction. See, e.g., *McGowan v. Commissioner*, 67 T.C. 599 (1976) (jurisdiction is not removed through an attempted concession by one party); *Fotochrome, Inc. v. Commissioner*, 57 T.C. 842 (1972) (under the Bankruptcy Act, the Tax Court was not deprived of jurisdiction because of a bankruptcy filing subsequent to the petition in the Tax Court being filed); *Main-Hammond Land Trust v. Commissioner*, 17 T.C. 942 (1951), affd. 200 F.2d 308 (6th Cir. 1952) (jurisdiction remains unimpaired despite the fact that the trust was terminated after the filing of the petition); *Bowman v. Commissioner*, 17 T.C. 681 (1951) (jurisdiction is not removed through waiver or disclaimer by respondent); *Richter v. Commissioner*, 16 B.T.A. 936 (1929) (subsequent payment of additional tax did not deprive the Board of jurisdiction).

This rule is consistent with the general procedure in the Federal court system. "In general, federal jurisdiction depends on the facts as they exist at the time suit is commenced, and is not conferred or divested by later changes." *Lanigan v. Boston Terminal Corp.*, 112 F. Supp. 957, 958 (D. Mass. 1953); *Fairview Park Excavating Co. v. Al Monzo Construction Co.*, 560 F.2d 1122 (3d Cir. 1977). The same rule is applicable to the case presently under review. Thus, the issuance of a final adverse determination letter after the filing of a valid petition does not moot the original petition. See *B.H.W. Anesthesia Foundation, Inc. v. Commissioner*, 72 T.C. 681 (1979). In that case, as in the one presently before us, the petition was filed on the basis of a failure to make a determination, and immediately after a petition was filed with this Court, respondent issued an unfavorable ruling. The subsequent issuance of the unfavorable ruling did not divest the Court of jurisdiction in *B.H.W. Anesthesia Foundation*, nor does it so divest the Court in this case.

Section 7428(a)[3] requires (1) an actual controversy (2) involving a determination or a failure to make a determination by the Secretary (3) with respect to an organization's initial or continuing qualification or classification as an exempt organization, a qualified charitable contribution donee, a private foundation, or a private operating foundation.

Respondent insists that no actual controversy exists. Sec. 7428(a). "Actual controversy" is not defined by the Code nor by the legislative history of section 7428. However, guidance can be found in section 7476 to which the legislative history of the declaratory judgment provisions now under consideration made frequent reference.[4]

Section' 7476 created a declaratory judgment remedy for

---

[3]SEC. 7428 DECLARATORY JUDGMENTS RELATING TO STATUS AND CLASSIFICATION OF ORGANIZATIONS UNDER SECTION 501(c)(3), ETC.

(a) CREATION OF REMEDY.—In a case of actual controversy involving—

(1) a determination by the Secretary—

(A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),

(B) with respect to the initial classification or continuing classification of an organization as a private foundation (as defined in section 509(a)), or

(C) with respect to the initial classification or continuing classification of an organization as a private operating foundation (as defined in section 4942(j)(3)), or

(2) a failure by the Secretary to make a determination with respect to an issue referred to in paragraph (1),

upon the filing of an appropriate pleading, the United States Tax Court, the United States Court of Claims, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification or continuing qualification or with respect to such initial classification or continuing classification. Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Claims, as the case may be, and shall be reviewable as such. For purposes of this section, a determination with respect to a continuing qualification or .continuing classification includes any revocation of or other change in a qualification or classification.

(b) LIMITATIONS.—

*       *       *       *       *       *       *

(2) EXHAUSTION OF ADMINISTRATIVE REMEDIES.—A declaratory judgment or decree under this section shall not be issued in any proceeding unless the Tax Court, the Court of Claims, or the district court of the United States for the District of Columbia determines that the organization involved has exhausted administrative remedies available to it within the Internal Revenue Service. An organization requesting the determination of an issue referred to in subsection (a)(1) shall be deemed to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination with respect to such issue at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination.

[4]S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 624–627; H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 975–976, 978; Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, 1976–3 C.B. (Vol. 2) 1, 413–416.

organizations and individuals seeking qualification of certain retirement plans. When Congress was considering creating a declaratory judgment remedy with respect to the retirement plans, the House report defined what constituted an "actual controversy" within the meaning of section 7476. That section requires that the plan be put into effect, that notice be given to all interested parties, and that administrative remedies be exhausted. H. Rept. 93–807 (1974), 1974–3 C.B. (Supp.) 236, 342–344.

Similarly, section 7428 requires a request be made by the organization to the Secretary of the Treasury for a determination and the exhaustion of administrative remedies. Sec. 7428(b)(2).

However, respondent contends that an actual controversy requires a final adverse determination by him, implying that a proposed revocation is not sufficient. Respondent argues that, since petitioner's status at the time of filing its petition in this Court was that of a nonprivate foundation, petitioner seeks to obtain by declaratory judgment a status it already has, and he cites two cases in support for his position: *Ohio County & Independent Agriculture Societies v. Commissioner*, 610 F.2d 448 (6th Cir. 1979), affg. an order of this Court, cert. denied 446 U.S. 965 (1980); *CREATE (Christian, Research, Education, Action, Technical Enterprise), Inc. v. Commissioner*, 634 F.2d 803 (5th Cir. 1981), affg. an order of this Court.

In *Ohio County*, petitioner, which had an existing classification as a section 501(c)(3) organization, sought *reclassification* as a section 170(b)(1)(A)(v) organization as an instrumentality of the State of Ohio. The Court of Appeals for the Sixth Circuit agreed with our Court, concluding that we did not have jurisdiction under section 7428 because there was no actual controversy under section 501(c)(3). The Court's decision in *Ohio County* went to whether the controversy fit within the specific classifications Congress enumerated in section 7428(a)(1)(A) through (C).[5]

In *CREATE*, petitioner's status was not in issue, but the question was whether a certain contributor was subject to a 2-

---

[5]See note 3.

percent limitation on a charitable contribution. The case did not involve petitioner's initial or continuing classification.

Although petitioner retained its nonprivate foundation status throughout the administrative process, its continuing classification is unquestionably in issue. If petitioner does not succeed in its timely and expeditious administrative efforts, its nonprivate foundation status will be revoked. Indeed, its classification was revoked more than 32 months after it began its administrative efforts as is manifest by the issuance of the final adverse determination letter sent petitioner on May 28, 1980.[6] An actual controversy existed on the date petitioner filed its petition herein.

Our interpretation of the meaning of "actual controversy" also comports with the general rule followed by the Federal courts. This Court has looked to the standards imposed by article III courts on previous occasions before allowing standing. See, e.g., *Thompson v. Commissioner*, 71 T.C. 32, 38–39 (1978). In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, the Supreme Court defined actual controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. sec. 400 (now sec. 2201): "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 312 U.S. 270, 273 (1941).

Having found that an actual controversy exists, the question of whether the petition herein was validly filed depends on whether petitioner has made a request for a determination and has exhausted its administrative remedies.

Respondent makes an argument that a final determination with respect to petitioner's continuing classification has not been made as required by section 7428(a). He maintains that section 7428(a)(1) is satisfied only by the issuance of a final adverse determination letter. Therefore, he asserts that, because no final adverse determination letter was issued before the filing of the petition in this Court, petitioner's nonprivate foundation status has not been revoked. Respondent relies on *New Community Senior Citizen Housing Corp. v.*

---

[6]See and compare *B.H.W. Anesthesia Foundation, Inc. v. Commissioner*, 72 T.C. 681, 682 n. 2 (1979).

*Commissioner*, 72 T.C. 372 (1979). In *New Community*, the petitioner-organization, which was qualified under section 501(c)(3), had requested a ruling as to whether certain proposed transactions would jeopardize petitioner's exempt status. Within 90 days from the date the ruling was issued, petitioner-organization filed a petition with this Court under section 7428(a)(1)(A). In that case we said that "section 7428 is designed to provide a review only of respondent's final determinations affecting the tax qualification of a section 501(c)(3) organization." 72 T.C. at 375.

It is true that in both *New Community* and in the case presently under review, the petitioner's continuing qualification as a section 501(c)(3) organization and as a nonprivate foundation, respectively, had not been revoked at the time the petitions for declaratory judgment were filed. However, two critical points distinguish *New Community* from the present case. At the time petitioner in this case filed its petition, respondent had proposed to revoke petitioner's nonprivate foundation status, while in *New Community*, respondent had made no step toward revoking the status of petitioner. The ruling involved was just advisory. Equally as important, petitioner does not base its claim on section 7428(a)(1) as the petitioner in *New Community* did, but, rather petitioner makes its claim under section 7428(a)(2) for failure to make a determination.

Respondent counters that he has not failed to make a determination under section 7428(a)(2). Rather, he takes the position that petitioner retained its nonprivate foundation status when it filed its petition in this Court. Petitioner vigorously maintains that respondent has failed to make a final determination with respect to its written protest to respondent's proposed revocation letter.

The legislative history of both section 7428 and section 7476 defines a failure to make a determination as a "failure to act" by the Internal Revenue Service with respect to a request for a determination.[7]

Respondent argues that section 7428 was not intended to

---

[7]Joint Comm. on Taxation, 94th Cong., *supra*, 2d Sess., General Explanation of the Tax Reform Act of 1976, 1976–3 C.B. (Vol. 2) at 417. H. Rept. 93–807 (1974), 1974–3 C.B. (Supp.) 236, 344.

provide for declaratory relief from proposed revocations or reclassifications of foundation status because the purpose of the Tax Reform Act of 1976 was to protect potential contributions. Contributions to an organization are protected until a final adverse determination letter is issued, and even then, the organization can seek declaratory relief and obtain continued protection for contributions under section 7428(c). Therefore, in respondent's opinion, section 7428(a)(2) applies only to initial qualification cases where continued contributions would not be protected. Respondent cites *New Community Senior Citizen Housing Corp. v. Commissioner, supra,* to support his theory. Respondent's reliance on *New Community* is misplaced because that case only dealt with section 7428(a)(1). If Congress intended to so limit the reach of section 7428(a)(2), it would have explicitly so provided. Instead, Congress clearly intended that declaratory judgment actions as to tax-exempt status as charitable, etc., organizations be available remedies for revocation cases where final determinations were made and where there has been a failure to make a determination. Sec. 7428(a)(2); see Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, 1976–3 C.B. (Vol. 2) 1, 415. Additionally, Rules 210–217 and the Notes appertaining thereto specifically provide for cases where there has been a revocation. 68 T.C. 1025, 1031–1051.

In fact, the two cases that prompted Congress to enact the declaratory judgment provision for exempt organizations were revocation cases. See *Bob Jones University v. Simon,* 416 U.S. 725 (1974); *Alexander v. "Americans United" Inc.,* 416 U.S. 752 (1974); Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, *supra,* 1976–3 C.B. (Vol. 2) at 413. In our view, section 7428(a)(2) applies to both initial and continuing classification situations, and we so hold.

Finally, respondent argues that, even if it is determined that respondent has failed to make a determination with respect to petitioner's continuing classification as a nonprivate foundation, petitioner has failed to exhaust its administrative remedies. Sec. 7428(b)(2). Although petitioner has completed the protest and appeal procedures through the National Office, respondent contends that it must file an application requesting a new determination of its foundation status.

Petitioner argues that it has exhausted its administrative remedies since it submitted a written protest to respondent's proposed revocation and has completed the appeal process through the National Office as required by Rev. Proc. 76–34, 1976–2 C.B. 657. Respondent contends that the protest and appeal procedure is separate and distinct from the procedure of making a request for a new determination of foundation status. In support of that contention, respondent cites sections 601.201(n)(2)(iii) and 601.201(n)(6), Statement of Procedural Rules; Rev. Proc. 76–34, 1976–2 C.B. 657, secs. 3 and 4, and secs. 5, 6, and 7; Rev. Proc. 77–21, 1977–1 C.B. 586, sec. 6.02;[8] *New York County Health Services Review Organization, Inc. v. Commissioner*, an unreported case (D. D.C. 1980, 45 AFTR 2d 80–1552, 80–1 USTC par. 9398).

Section 7428(b)(2) requires that an organization exhaust administrative remedies available to it within the Internal Revenue Service before a declaratory judgment can be issued. The organization will have exhausted its administrative remedies if 270 days have expired after a request for a determination has been made and the organization has taken, in a timely manner, all reasonable steps to secure a determination.[9]

Under the procedure for declaratory judgments set forth in the rules, there is no distinction made between requests for initial qualification cases and proposed revocation cases. To exhaust its administrative remedies, an organization must first file an application for exemption or a request for a determination of foundation status, comply with all requests for additional information, and complete the protest and appeal procedure.[10]

---

[8]Rev. Proc. 76–34 and Rev. Proc. 77–21 were modified and superseded by Rev. Proc. 80–25, 1980–1 C.B. 671.

[9]See note 3 *supra*; *Prince Corp. v. Commissioner*, 67 T.C. 318 (1976).

[10]Sec. 601.201(n)(7), Statement of Procedural Rules.

(iv) Section 7428(b)(2) of the Code requires that an organization must exhaust its administrative remedies by taking timely, reasonable steps to secure a determination. Those steps and administrative remedies that must be exhausted within the Internal Revenue Service are:

(a) The filing of a substantially completed application Form 1023 pursuant to subdivision (i) of this subparagraph, or the filing of a request for a determination of foundation status pursuant to subparagraph (2) of this paragraph;

(b) The timely submission of all additional information requested to perfect an exemption

The rules also provide procedures for requests for a new determination, sec. 601.201(n)(2)(iii), Statement of Procedural Rules, and proposed revocation of exempt status, sec. 601.201(n)(6), Statement of Procedural Rules.

In this case, the Internal Revenue Service proposed to revoke petitioner's nonprivate foundation status. The respondent is contending that a declaratory judgment action cannot be initiated after the procedure for a proposed revocation is followed. Instead, respondent argues that the procedure for a request for a new determination must also be completed.

We see no reason why either procedure when completed should not allow availability of the declaratory judgment remedy. The legislative history makes it crystal clear that section 7428 was intended to provide some relief to organizations that are initially denied exemption and to organizations whose status is revoked or modified. Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, *supra*, 1976–3 C.B. (Vol. 2) at 413 (citing *Bob Jones University v. Simon, supra,* and *Alexander v. "Americans United Inc.," supra.*)

In both *Bob Jones University v. Simon, supra,* and *Alexander v. "Americans United Inc.," supra,* respondent revoked or attempted to revoke the organization's status. The organiza-

---

application or request for determination of private foundation status; and

(c) Exhaustion of all administrative appeals available within the Service pursuant to subparagraphs (5) and (6) of this paragraph, as well as appeal of a proposed adverse ruling to the Conference and Review Staff of the Exempt Organizations Technical Branch in National Office original jurisdiction exemption application cases.

(v) *An organization will in no event be deemed to have exhausted its administrative remedies prior to the completion of the steps* described in subdivision (iv) of this subparagraph *and the earlier of*:

(a) The sending by certified or registered mail of a *notice of final determination; or*

(b) *The expiration of the 270-day period* described in section 7428(b)(2) of the Code, in a case in which the Service has not issued a notice of final determination and the organization has taken, in a timely manner, all reasonable steps to secure a ruling or determination.

(vi) The steps described in subdivision (iv) of this subparagraph will not be considered completed until the Internal Revenue Service has had a *reasonable time to act* upon the appeal or request for consideration, as the case may be.

(vii) A notice of final determination to which section 7428 of the Code applies is a ruling or determination letter, sent by certified or registered mail, which holds that the organization is not described in section 501(c)(3) or section 170(c)(2), is a private foundation as defined in section 509(a), or is not a private operating foundation as defined in section 4942(j)(3).

[Emphasis added.]

tion sued for injunctive relief; however, the Supreme Court found that the courts did not have jurisdiction as required by the Anti-Injunction Act, sec. 7421(a). The declaratory judgment statute for exempt organizations was explicitly enacted to provide relief to organizations in those situations. In those cases, the procedure did not initiate with a request for a new determination but rather from action taken by respondent. 416 U.S. at 727, 755.

Furthermore, although the rules do provide for different procedures, their differences are minimal. The requirements for a request for a new determination are that the request must be made in writing and made to the key District Director for the District in which the principal offices of the organization are located. Sec. 601.201(n)(2)(iii), Statement of Procedural Rules. If the District Director issues an adverse determination, the organization can pursue its protest and appeal rights by filing within 30 days a statement of facts, law, and argument.

Similarly, in the proposed revocation situation, the District Director advises the organization in writing of his proposed action and reasons for doing so. The organization has the same rights of protest and appeal. Sec. 601.201(n)(6)(ii), (iii), and (iv), Statement of Procedural Rules.

Thus, it appears that the major distinction between the two procedures is that one is initiated with an adverse determination made by respondent, while the other is initiated by the organization which is seeking reclassification or redetermination of its status. Beyond this initial step, both procedures provide for the same degree of review.[11]

We observe that, although respondent contends that an appeal from a proposed revocation does not meet the exhaustion of administrative remedies test, he agrees that once petitioner has received a final adverse determination letter, without the filing of a "request for a new determination," its remedies will be exhausted.

Indeed, the purpose of the exhaustion of administrative remedies requirement was to provide the Court with a full and

---

[11]Respondent also relies on two revenue procedures in support of his contention that the two procedures are distinct. Rev. Proc. 76–34, 1976–2 C.B. 657; Rev. Proc. 77–21, 1977–1 C.B. 586. These revenue procedures follow the rules, and the procedures need not be discussed again.

complete administrative record on which to base its decision. S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 626. *Animal Protection Institute, Inc. v. U.S.*, Court of Claims docket No. 609–77 (Trial Div. order dated Sept. 19, 1978, 42 AFTR 2d 78–5850, 78–2 USTC par. 9709). See also the Notes to Rules 210 and 217, 64 T.C. 1177, 1178–1179. If the issuance of a final adverse determination letter as a result of a proposed revocation is sufficient to vest this Court with jurisdiction, then respondent's argument is unfounded, for the statute clearly provides for the situation where "the Secretary fails to make a determination." Sec. 7428(a)(2). Additionally, several cases decided by this Court have found jurisdiction in a declaratory judgment action where a final adverse determination letter was issued as the result of the issuance of a proposed revocation. See, e.g., *Industrial Aid for the Blind v. Commissioner*, 73 T.C. 96 (1979); *Hutchinson Baseball Enterprises v. Commissioner*, 73 T.C. 144 (1979), on appeal (10th Cir., Jan. 24, 1980); *Western Catholic Church v. Commissioner*, 73 T.C. 196 (1979), affd. without published opinion 631 F.2d 736 (7th Cir. 1980), cert. denied 450 U.S. 981 (1981). There is no other interpretation but that the written protest from a proposed revocation was deemed a "request for a determination" in those cases. In these circumstances we hold that petitioner's written protest of September 2, 1977, is a request for determination within the intendment of section 7428(b)(2).[12]

Moreover, the District Court for the District of Columbia has also held that jurisdiction in a declaratory judgment action under section 7428 is proper where the organization has received a final adverse determination letter as a result of a proposed revocation. *Prince Edward School Foundation v. United States*, 478 F. Supp. 107 (D. D.C. 1979), affd. per curiam in an unreported opinion (D.C. Cir. 1980), cert. denied 450 U.S. 944 (1981), 47 AFTR 2d 81–910, 81–1 USTC par. 9203; *Consumer Credit Counseling Service of Alabama, Inc. v. United States*, an unreported opinion (D. D.C. 1978, 44 AFTR 2d 79–5122, 78–2 USTC par. 9660).[13]

---

[12]See and compare *Friends of Society of Servants of God v. Commissioner*, 75 T.C. 209 (1980).

[13]See also *Animal Protection Institute, Inc. v. United States*, Court of Claims docket No. 609–77 (Trial Div. order dated Sept. 19, 1978, 42 AFTR 2d 78–5850, 78–2 USTC par. 9709).

Furthermore, the Internal Revenue Service publications, which are sent to taxpayers to advise them of the procedure to be followed in an appeal of a proposed revocation, provide for a declaratory judgment remedy. Both publications 892 and 898 state:

If the organization does not exercise its appeal rights within the time provided, it will be considered by the Internal Revenue Service as a failure to exhaust available administrative remedies. A declaratory judgment under section 7428 of the Code will not be issued in a case subject to that provision unless a court with jurisdiction determines that the organization involved has exhausted its administrative remedies available within the Internal Revenue Service.

Respondent also relies on *New York County Health Services Review Organization, Inc. v. Commissioner, supra.* In that case, petitioner-organization already had a favorable section 501(c)(3) determination letter and the Secretary had made no final determination regarding the proposed modification of petitioner's status at the time its petition for declaratory relief was filed. The court held that the organization's challenge to the proposed modification was not sufficient to constitute exhaustion of its administrative remedies. The court said the taxpayer must file a substantially completed Form 1023 if it wants its tax–exempt status redetermined. We think that the filing of another Form 1023 would be wasteful and, where an original Form 1023 is on file for the organization, the organization has substantially completed the administrative process by protest and appeal. A new Form 1023 would only supply the same information. If a new Form 1023 was required to be filed and an adverse determination was attained therefrom, the organization would be required to complete another protest and appeal procedure before it would be deemed to have exhausted its administrative remedies. Of what value is this additional appeal procedure where it is simply a rehashing of the same issues and facts involved in the first appeal procedure initiated as a result of the proposed revocation? The respondent's position would not change, but petitioner would suffer additional delays in obtaining a final ruling from a court.[14]

_____

[14]Compare *American New Covenant Church v. Commissioner,* 74 T.C. 293 (1980), where respondent had advised the organization to file its own application because it had no

Petitioner also contends that, even if it has failed to exhaust its administrative remedies, it has taken "all reasonable steps to secure a determination" which is all that is required by section 7428(b)(2). Petitioner emphasizes the delays experienced in the appeal process (consuming over 900 days in total) and suggests that the hardships caused thereby make this case ripe for a declaratory judgment. At least two prior decisions of this Court have found jurisdiction even though no final adverse determination letter was issued on or before the date the petitions were filed where respondent has unduly delayed in making a decision. *B.H.W. Anesthesia Foundation, Inc. v. Commissioner, supra; BBS Associates, Inc. v. Commissioner*, 74 T.C. 1118 (1980).[15]

Although the statute requires that respondent be given a minimum of 270 days,[16] we have held that the elapse of 270 days does not automatically grant the right to petition for declaratory relief. *Prince Corp. v. Commissioner*, 67 T.C. 318, 326 (1976).

As we said in *Prince Corp. v. Commissioner, supra* at 327:

Our task then is to determine whether, on all of the facts and circumstances presented, petitioner may be deemed to have exhausted its administrative remedies due to respondent's purported failure to process its request expeditiously. Prior judicial determinations of this nature have refused to require exhaustion only in rare cases involving extreme delays. See, e.g., *Walker v. Southern R. Co.*, 385 U.S. 196 (1966) (delays up to 10 years anticipated); *Smith v. Ill. Bell Tel. Co.*, 270 U.S. 587 (1926) (2 years); *Sunshine Publishing Co. v. Summerfield*, 184 F. Supp. 767 (D. D.C. 1960) (1½ years). * * *

In this case, more than 29 months passed between the issuance of the proposed revocation letter and the filing of the petition in this Court, and more than 21 months elapsed while the case was in consideration at the National Office. The 900 days consumed in this case clearly exceed the 2 years which elapsed in *B.H.W. Anesthesia Foundation v. Commissioner, supra,* and the 21 months in *BBS Associates, Inc. v. Commis-*

---

affiliation with another organization upon whose adverse ruling it sought to base a declaratory judgment action.

[15]See and compare *Prince Corp. v. Commissioner*, 67 T.C. 318 (1976).

[16]See note 3 *supra.*

*sioner, supra,* which were deemed inordinately long by this Court.

Finally, petitioner argues that section 7428 was intended to provide a remedy for hardships caused by undue administrative delays in securing private foundation determinations. We agree. Petitioner has been unable to obtain a ruling on a proposed transaction while the proposed revocation proceedings have been pending. This resulted in a 3-year delay in the closing of the Gladstone Estate. Of course, the uncertainties about petitioner's tax liabilities if a private foundation are also present.

Under these circumstances, the statute, the legislative history, and the procedural rules, we conclude that this Court has jurisdiction to make a declaration with respect to petitioner's continuing qualification as a nonprivate foundation pursuant to the petition filed in this case.

*An appropriate order will be issued.*

Reviewed by the Court.

HALL, *J.,* did not participate in the consideration or disposition of this case.

SIMPSON, *J.,* concurring: I agree with the majority that the first petition filed by the Gladstone Foundation was sufficient to invest this Court with jurisdiction to decide the issue of whether the Gladstone Foundation is a private foundation. However, prior to the hearing on the Commissioner's motion to dismiss, the Commissioner issued his determination revoking the classification of the organization, and a second petition was filed by the Gladstone Foundation; the Commissioner concedes that under such petition, we have jurisdiction to decide the same issue. Since the Commissioner concedes that the second petition properly invokes our jurisdiction, there is a question as to why we have chosen to decide whether the first petition confers jurisdiction upon us. I wish to add a statement of my reasons for concluding that such concession did not make the first petition moot.

In explaining why we have chosen to retain jurisdiction of the first petition, the majority states that, as a rule, once the

Court's jurisdiction is properly invoked, subsequent events do not divest the Court of jurisdiction. However, we know that the Court's jurisdiction is limited to deciding "real issues" (*Roderick v. Commissioner*, 57 T.C. 108, 113 (1971)); we do not have jurisdiction to answer abstract or academic questions (*Cohen v. Commissioner*, 20 B.T.A. 647, 648 (1930); see generally 9 J. Mertens, Law of Federal Income Taxation, par. 50.47, p. 121 (1977 rev.)), and ordinarily we do not decide moot issues (compare *LTV Corp. v. Commissioner*, 64 T.C. 589, 594–595 (1975), with *McGowan v. Commissioner*, 67 T.C. 599, 604–608 (1976)). In my opinion, the statement of the majority fails to explain why these principles are not applicable in this case when the Commissioner has conceded that we have jurisdiction under the second petition.

In my view, there are at least two compelling reasons for deciding the question of whether this Court has jurisdiction under the first petition for declaratory judgment filed by the Gladstone Foundation. First, there will probably be other situations in which the IRS indicates that it proposes to revoke or modify an organization's tax exemption, and in which there is undue delay by the IRS in issuing a final notice of determination with respect to the matter. Therefore, we should decide at this time whether in such situations exempt organizations can bring a petition in this Court before a final notice of determination is issued. Second, Rule 217(c)(2) provides that when a petition seeking declaratory judgment is filed in this Court, "The burden of proof shall be upon the petitioner * * * as to the grounds set forth in the notice of determination," but that "If the respondent has not issued a notice of determination, he shall bear the burden of proof as to every ground upon which he relies to sustain his position," other than jurisdictional and similar grounds. Thus, whether this Court has jurisdiction in this case under the first petition presumably will determine the party upon which the burden of proof will lie. See Rule 217(c)(2)(ii). For such reasons, the issue of whether the first petition was sufficient to invoke our jurisdiction is not academic or moot.

TANNENWALD, FAY, and GOFFE, *JJ.*, agree with this concurring opinion.

FEATHERSTON, *J.*, dissenting: I respectfully dissent. I would follow the decision of the District Court in *New York County Health Services Review Organization, Inc. v. Commissioner* (D. D.C. 1980, 45 AFTR 2d 80–1552, 80–1 USTC par. 9398), and thus avoid the jurisdictional uncertainties created by declining to give effect to the procedural rules on exemption revocations. The merits of the substantive issue can be litigated in the second case filed by petitioner.

PARKER, *J.*, agrees with this dissenting opinion.

CHABOT, *J.*, dissenting: Up to now, declaratory judgment jurisdiction under section 7428 has been thought to lie (1) where an organization has sought a status (qualification or classification) previously unacknowledged by the Internal Revenue Service and (2) where the Internal Revenue Service has revoked an organization's favorable status ruling. *The majority now add the situation where the organization has sought no change in status and the Internal Revenue Service has not revoked its favorable ruling.* From this expansion I respectfully dissent.

## I. Failure To Make a Determination

The majority apparently view the foundation of declaratory judgment jurisdiction in the instant case as the failure by the Secretary to make a determination with respect to an issue referred to in paragraph (1) of section 7428(a); the issue referred to evidently is the one in subparagraph (B) of this paragraph (1), i.e., "with respect to the initial classification or continuing classification of an organization as a private foundation (as defined in section 509(a))."[1]

However, at the time the petition was filed in the instant case, there was outstanding a determination that petitioner was a public charity. Indeed, the determination even dealt with the particular category of public charity. Petitioner wanted to be classified as a medical research organization

---

[1] Notwithstanding the majority's use of the term "qualification" (majority opinion at pp. 228, 236 *supra*), it is evident that both parties agree that the instant case does not present a qualification issue—the sort of issue referred to in subpar. (A) of par. (1) of sec. 7428(a).

described in section 170(b)(1)(A)(iii), and the only outstanding determination put petitioner precisely into that category. Cf. *Friends of Soc. of Servants of God v. Commissioner*, 75 T.C. 209 (1980). At that time, there had been no "failure to make a determination" with respect to petitioner's private foundation classification; it had a determination classifying it favorably.

The majority's conclusion that there can be a "failure to make a determination" within the meaning of section 7428(a)(2) at a point when there is outstanding a completely favorable determination as to petitioner does not appear to be consistent with the intended meaning of that phrase in the statute.

## II. Revocation Case versus Nonrevocation Case

The majority assert (majority opinion, at p. 234 *supra*) that in this case, involving a proposed revocation of petitioner's nonprivate foundation status, to require the filing of a new Form 1023, Application for Recognition of Exemption, in order to exhaust administrative remedies would be "wasteful." I believe that it would not only be "wasteful" here, but totally inappropriate for petitioner (which was not requesting a change in its existing classification at the time the petition in this case was filed) to file a new Form 1023, or for that matter, any form of request for determination.

This serves to highlight the majority's failure to recognize the inherent difference between (1) a revocation case and (2) a situation where an organization asks respondent to recognize a status (qualification or classification) previously unacknowledged by respondent. This failure causes the majority to blur the distinction drawn by our Rules between revocation case protests and nonrevocation case requests for determination.

Our Rules are premised on an understanding that normally a revocation results from an audit where the Internal Revenue Service is making its own investigation, not upon the request by an organization for a determination; in the latter case the Internal Revenue Service accepts the facts as stated in the request without investigating them. See the Notes accompanying Rules 213(a)(2) and 217(a), 68 T.C. 1042, 1048. Consequently, Rule 217(a) provides that in an action for declaratory

judgment which does not involve a revocation, the Court will ordinarily[2] look only to the administrative record; but, disposition in a revocation case may be made solely on the basis of the administrative record only where the parties agree that that record contains all the relevant facts and that these facts are not in dispute. Similarly, for purposes of framing an answer, Rule 213(a)(2) recognizes that in revocation cases the Internal Revenue Service will rely upon facts outside the administrative record. See Rule 212 and the accompanying Note. 68 T.C. 1041.

On page 233 of their opinion, the majority cite several cases[3] involving declaratory judgment actions, in which we reached the merits where a final adverse determination letter was issued in the context of the Internal Revenue Service's revocation of the organization's exempt status. In none of these cases did the Court recognize or mention any jurisdictional issue before reaching the merits. From this, the majority conclude that in these cases, as well as the instant case, there is "no other interpretation" but that the organization's written protest "is a request for determination."

Each of the cases cited by the majority on this point was a revocation case. We have not required a request for determination as a basis for declaratory judgment jurisdiction where the

---

[2]The Note accompanying Rule 217(a) states (68 T.C. 1025, 1048) as follows:

"Although the Rule states that an action not involving a revocation will "ordinarily" be disposed of on the basis of the administrative record, there do not appear to be at this time any circumstances under which a trial will be held except as to disputed jurisdictional facts or to resolve disagreement between the parties as to the contents of the administrative record. * * * "

[3]*Western Catholic Church v. Commissioner*, 73 T.C. 196 (1979), affd. without published opinion 631 F.2d 736 (7th Cir. 1980) (organization, formed for religious purposes, was granted exemption upon representations in its application for exemption; subsequently, after examination by Internal Revenue Service of its activities, its exemption ruling was retroactively revoked by a final determination letter); *Hutchinson Baseball Enterprises v. Commissioner*, 73 T.C. 144 (1979), on appeal (10th Cir., Jan. 24, 1980) (organization, formed to promote, advance, and sponsor baseball, including Little League and amateur baseball, filed an application for exempt status on Oct. 5, 1973; the Internal Revenue Service by letter dated Oct. 24, 1973, determined that the organization was exempt as of Oct. 5, 1973, but only through July 31, 1975, by which time it must have raised the public support necessary for avoidance of private foundation status; after reviewing operational information furnished by the organization, respondent issued a final adverse determination revoking exemption on Aug. 28, 1978); *Industrial Aid for the Blind v. Commissioner*, 73 T.C. 96 (1979) (organization, formed to act as sales agent for products manufactured by blind persons, was granted exemption on Dec. 30, 1941, by the Internal Revenue Service; subsequently, the Internal Revenue Service determined that it was no longer exempt).

dispute before us was whether respondent was correct in revoking a favorable determination. Indeed, the Court, in its 1977 revision of its Rules as to declaratory judgments (which went into effect more than 2 years before the earliest of the cited cases), had already observed that "Where the situation is one of revocation by the Service, it is not likely that there will have been a request for a determination." Note accompanying Rule 211, 68 T.C. 1040.

The reason the opinions in the three cases cited by the majority are silent on this point is simply that there is no such requirement where there has been a revocation.[4] The majority attempt to create the requirement now, point to the three revocation cases as evidence that the requirement of a request for determination can be met by a protest, and then use the protest as the measuring point for an exhaustion of remedies analysis in a case where there was no revocation.

The Byzantine nature of the majority's analysis should not be allowed to obscure the conflict between that analysis and the understanding reflected in our Rules and prior practice.[5]

---

[4]The legislative history, in discussing exhaustion of administrative remedies, does state that the organization must demonstrate that it has made a request to the Internal Revenue Service for a determination. H. Rept. 94-658, p. 287 (1975), 1976-3 C.B. (Vol. 2) 695, 979; S. Rept. 94-938, p. 590 (1976), 1976-3 C.B. (Vol. 3) 49, 628; Staff of the Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, p. 405, 1976-3 C.B. (Vol. 2) 1, 417. However, this is plainly not directed to a revocation case where the organization has already filed its request for determination and received a determination, which the Internal Revenue Service is proposing subsequently to revoke.

[5]Contrast the majority's analysis with the analysis in Tax Management Portfolio, *Exempt Organizations—Declaratory Judgments*, No. 421, at A-15, as follows:

"Although the Tax Court [in *New Community Sr. Citizen Housing v. Commissioner*, 72 T.C. 372 (1979)] held that the Service's ruling was not a 'determination', it did not consider whether the organization's initial ruling request constituted a 'request for determination' starting the 270-day period running, or whether an organization can ever make a 'request for determination' prior to revocation of exempt status. In *New Community Senior Citizen Housing Corp.* the organization could have argued that the Service's failure to actually revoke the organization's exempt status within 270-days after its initial request for determination was a failure to make a determination conferring declaratory judgment jurisdiction.

*    *    *    *    *    *    *

"The same type of argument could also arise in the context of an audit. The IRS could be in the process of auditing the returns of a sec. 501(c)(3) organization with a view toward revocation of exempt status. To cut short the Service's review, the organization could make a formal request for determination and, then, if the Service does not complete its audit within 270 days, file a declaratory judgment action arguing that administrative remedies have been exhausted.

The Rules recognize the distinction between protests and requests for determination. See Rules 210(b)(10)[6] and 211(e)(2).[7] The majority effectively obliterate the distinction.

Section 7428(b)(2) provides, in pertinent part, that—

An organization requesting the determination of an issue referred to in subsection (a)(1) shall be deemed to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination with respect to such issue at the expiration of 270 days after the date on which the request for such determination was made if * * *

Section 7476(b)(3), relating to retirement plans, is similar. The legislative histories of both sections also define a failure to make a determination as a "failure to act" by the Internal Revenue Service with respect to a request for a determination.[8]

Inasmuch as a request for determination is inappropriate where an organization does not request a change in its existing status, there can be no failure to make a determination as defined in the legislative history. Consequently, subsection (a)(2) does not give us declaratory judgment jurisdiction over the instant case.

In the instant case there is a further difficulty with the majority's conclusion that there has been a failure to make a

---

"The organization in *New Community Senior Citizen Housing Corp.*, *supra*, and the organization undergoing an audit should not be able to file a declaratory judgment action using the 270-day rule in this manner. An organization's source of funds are not 'dried up' until exempt status is actually revoked. Consequently, an organization that has already obtained recognition of exemption should not be able to request a determination and start the 270-day period running until the IRS actually revokes its favorable ruling. * * * "

[6]RULE 210. GENERAL

(b) Definitions: As used in the Rules in this Title—

*     *     *     *     *     *     *

(11) "Administrative record" included *the request for determination*, all documents submitted to the Internal Revenue Service by the applicant in respect of *the request for determination, all protests* and related papers submitted to the Internal Revenue Service, all written correspondence between the Internal Revenue Service and the applicant in respect of *the request for determination or such protests*, * * * [Emphasis supplied.]

[7]RULE 211. COMMENCEMENT OF ACTION FOR DECLARATORY JUDGMENT

(f) Petition in Exempt Organization Action: The petition in an exempt organization action shall contain:

*     *     *     *     *     *     *

(2) The date upon which *the request for determination, if any*, was mailed to the Internal Revenue Service, and the office to which it was mailed; [Emphasis supplied.]

[8]As to sec. 7428, see note 4 *supra*. As to sec. 7476, enacted by sec. 1041(a) of the Employee Retirement Income Security Act of 1974, Pub. L. 93–406, 88 Stat. 949, see S. Rept. 93–383, p. 114, 1974–3 C.B. (Supp.) 80, 193; H. Rept. 93–807, 109 (1974), 1974–3 C.B. (Supp.) 236, 344.

determination with respect to petitioner's protest, which the majority are pleased to treat as a request for a determination.

The protest in question states as follows:

The J. David Gladstone Foundation (hereinafter referred to as "taxpayer"), whose address is 9777 Wilshire Boulevard, Suite 610, Beverly Hills, California, disagrees with the determination that taxpayer is a private foundation within the meaning of sec. 509(a) of the Internal Revenue Code (hereinafter called the "Code") for its taxable years ended December 31, 1974 and 1975, proposed by the District Director in the above described determination letter and accompanying report of examination, and hereby appeals therefrom.

In respondent's final adverse determination, dated May 28, 1980, he conceded his proposal to reclassify petitioner as to 1974 and 1975, the only years put in dispute by the protest. Thus, at that point not only was there no failure to make a determination as to the matter put in issue by the protest, but petitioner received a favorable ruling on that limited point.

Of course, a dispute remains. However, that dispute is framed by the revocation letter of May 28, 1980—not by the protest. The instant case should properly be treated as a revocation case based on that letter; it should not be treated as a failure to make a determination case, based on petitioner's protest.

On page 235 of their opinion, the majority cite two cases[9] involving declaratory judgment actions where we found that we had jurisdiction even though no final determination letter was issued on or before the date the petitions were filed, where more than 270 days had elapsed after the respective requests for determination. However, these cases are initial qualification or determination cases where *the petitioners sought a determination of a status previously unacknowledged by the Internal Revenue Service.* These cases have no application to the situation we face in the instant case; their citation is

---

[9]*B.H.W. Anesthesia Foundation v. Commissioner*, 72 T.C. 681 (1979) (in which the organization was requesting initial qualification under sec. 501(c)(3), where it filed its petition more than 270 days after filing its application for recognition of exemption; the Internal Revenue Service conceded this jurisdictional point, 72 T.C. at 682 n. 2); *BBS Associates, Inc. v. Commissioner*, 74 T.C. 1118 (1980), on appeal (3d Cir., Nov. 24, 1980) (in which the taxpayer requested a determination that its profit sharing plan met the requirements of sec. 401(a), where almost 2 years had passed after its request and no final determination letter had been issued).

another example of the majority's failure to distinguish between revocation and nonrevocation cases.

## III. Notice of Deficiency

The administrative record in the instant case includes a copy of a notice of deficiency to petitioner, dated May 29, 1980, which determines a deficiency in section 4940(a) excise tax (investment income of private foundations) for 1976 in the amount of $43,161. Thus, petitioner has had its "ticket to the Tax Court"[10] for a year. No petition has been filed in this Court with respect to this notice of deficiency. The record in the instant case does not disclose whether a refund suit has been filed in a District Court or in the Court of Claims with respect to this tax.

The legislative history underlying section 7428, enacted by section 1306(a) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1717, states that "This provision is intended to facilitate relatively prompt judicial review of the specified types of exempt organization issues; *it is not intended to supplant the normal avenues of judicial review* (redetermination of a deficiency or suit for refund of taxes) where those normal procedures could be expected to provide opportunities for prompt determinations." (Emphasis added.) Furthermore, the legislative history indicates plainly that we are to look to certain events occurring after we properly obtain jurisdiction in the first instance over such a case, such as the filing of a petition regarding a redetermination of a related deficiency. H. Rept. 94–658, p. 286 (1975), 1976–3 C.B. (Vol. 2) 695, 978;[11] S.

---

[10]*Commissioner v. Shapiro*, 424 U.S. 614, 630 n. 12 (1976); *Corbett v. Frank*, 293 F.2d 501, 502 (9th Cir. 1961); *Midland Mortgage Co. v. Commissioner*, 73 T.C. 902, 907 (1980).

[11]The cited Ways & Means Committee report states as follows:

"Also, it is expected that in general a court which has accepted pleadings in a declaratory judgment proceeding will yield to a court which has accepted pleadings in a redetermination of deficiency or a tax refund suit, unless the proceedings in the declaratory judgment suit are so far along that it would facilitate interests of prompt justice for the latter court to yield to the former. Your committee's decisions are not to be permitted to create conflicting determinations on the parts of different trial courts with regard to any of the questions that may be determined in a declaratory judgment suit; nor are your committee's decisions to operate so as to require duplication of effort on the part of parties, witnesses, or courts."

To the same effect are the cited Senate Finance Committee report and the cited Joint Taxation Committee staff explanation.

Rept. 94–938, pp. 588–589 (1976), 1976–3 C.B. (Vol. 3) 49, 626–627; Staff of the Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, p. 404, 1976–3 C.B. (Vol. 2) 1, 416.

The authorities and analysis presented by the majority (at pp. 223–224 of their opinion) are designed to show that this Court does not necessarily lose jurisdiction merely because respondent issued a final adverse determination after a valid petition was filed with us. However, the majority ignore the notice of deficiency. This notice puts in petitioner's hands the right and opportunity to travel "the normal avenues of judicial review (redetermination of a deficiency or suit for refund of taxes)" and does so at a time "where those normal procedures could be expected to provide opportunities for prompt determinations."

Indeed, one may wonder whether there is any purpose to further proceedings in the instant case other than petitioner's evident desire to gain the possible tactical advantage adverted to in Judge Simpson's concurring opinion. I find it disturbing that petitioner appears to be using this important relief measure, in direct contravention of the Congress' stated purpose of enactment, merely to enable petitioner to avoid the burden of proof, or to gain a possible tactical advantage by cutting short an audit (see note 5 *supra*) or restricting respondent's right to introduce evidence outside the administrative record (see note 2 *supra*). I find it more disturbing that the majority are putting this Court's imprimatur on such misuse of the statute.

## IV. Conclusion

The instant case should not be here. It does not fit into the statutory scheme as we have understood it in our Rules. It is contrary to the basic purpose for which the Congress enacted the declaratory judgment procedure.

I would grant respondent's motion to dismiss.

PARKER, J., agrees with this dissenting opinion.