AHW CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 28557–81X.    Filed August 25, 1982.

*Ellen Higgins* and *Carter G. Bishop*, for the petitioner.

*Stuart D. Gibson, Carolyn A. Boyer*, and *Henry G. Salamy*, for the respondent.

OPINION

WHITAKER, *Judge*: Petitioner brought an action for a declaratory judgment pursuant to section 7428[1] and Rule 211, Tax Court Rules of Practice and Procedure, to review a determination with respect to petitioner's initial qualification as an organization described in section 501(c)(3). This case is now before the Court on respondent's motion to ·dismiss for lack of jurisdiction on the ground that no adverse determination has

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended.

been issued to petitioner, and that there is therefore no actual, justiciable controversy that can be heard by this Court.

Petitioner is a nonprofit corporation organized under the laws of the State of Minnesota with its principal office in St. Paul, Minn. Petitioner was organized on September 9, 1980, as a wholly owned subsidiary of the Amherst H. Wilder Foundation, a nonprofit operating foundation exempt from taxation under section 501(c)(3).

On October 16, 1980, petitioner mailed to respondent an "Application for Recognition of Exemption" (Form 1023), requesting exemption from Federal income tax under section 501(c)(3). On this application, petitioner stated that it was formed to perform two interrelated services for the Wilder Foundation. First, it was established to plan, develop, and manage the housing component of the St. Paul Energy Park project (hereinafter the Energy Park), which was designed to serve as a national energy demonstration project containing special housing, transportation, energy, and recreational systems. A secondary purpose for the formation of petitioner was to provide at cost consulting and property management and maintenance services to other exempt organizations in their capital and urban development projects, utilizing the resources and experience gained during the 5-year term of the Energy Park project. By letter dated May 5, 1981, counsel for petitioner confirmed that petitioner desired to offer the consulting and management services described in the application and the supplemental materials submitted on March 16, 1981.

Respondent issued a proposed adverse ruling. Based on Rev. Rul. 72–369, 1972–2 C.B. 245, this proposed adverse ruling found that the provision of managerial and consulting services, at petitioner's cost, to unrelated exempt organizations was not a charitable activity, and that petitioner was therefore not operated exclusively in furtherance of exempt purposes. Petitioner filed a written protest to respondent's preliminary adverse ruling, arguing that services need not be provided *below cost* when there is a significant charitable benefit to be derived from the provision of those services. At a subsequent conference, respondent's representatives maintained that Rev. Rul. 72–369 was applicable to the services proposed to be provided by petitioner. Thereafter, by letter, petitioner's

counsel advised respondent that, based on respondent's position with respect to the proposed consulting and property management services, petitioner would confine its activities to participation in the Energy Park. Accordingly, petitioner received a determination letter, dated August 28, 1981, which recognized petitioner's exemption from Federal income tax under section 501(c)(3). This determination letter specified that petitioner had agreed not to provide property management or consulting services to other organizations.

On November 23, 1981, petitioner filed a petition in this Court seeking a declaratory judgment pursuant to section 7428. The petition alleged that the Commissioner had erred in determining that the providing of proposed property management and consulting services to other exempt organizations would not be an activity exclusively in furtherance of exempt purposes as specified in section 501(c)(3). Respondent moved to dismiss this petition for lack of jurisdiction.

Both petitioner and respondent recognize that under *Gladstone Foundation v. Commissioner*, 77 T.C. 221 (1981), the Court has jurisdiction in this case under section 7428 only if there is (1) an actual controversy (2) involving a determination by the Secretary (3) with respect to an organization's initial or continuing qualification as an exempt organization. The issue here is whether there exists an actual controversy, with respondent contending that there is no actual controversy here because the determination letter granted petitioner the section 501(c)(3) exempt status it requested. Petitioner, on the other hand, characterizes the determination letter as unfavorable in part because it had to agree to forego engagement in proposed consulting and management services in order to obtain the favorable determination. We agree with respondent that there is no actual controversy with respect to the ruling issued to petitioner and that, therefore, this Court has no jurisdiction in this case.

Respondent argues that this case fits into the framework of the line of cases in which the Court has held it lacked jurisdiction to issue a declaratory judgment with respect to an organization that had already received favorable classification but had sought a new determination that it would still be entitled to exemption despite changed circumstances or activities. The three cases relied upon by respondent are *Urantia*

*Foundation v. Commissioner*, 684 F.2d 521 (7th Cir. 1982), affg. 77 T.C. 507 (1981); *New Community Sr. Citizen Housing v. Commissioner*, 72 T.C. 372 (1979); *CREATE, Etc., Inc. v. Commissioner*, 634 F.2d 803 (5th Cir. 1981).

Subsequent to its receipt of its original determination of section 501(c)(3) exemption, the petitioner in *New Community* had requested respondent to rule as to whether certain proposed transactions would jeopardize the exemption. Respondent ruled that the proposed transactions would jeopardize the exemption, and, thereafter, the organization filed with this Court a petition for a declaratory judgment. After the filing of the petition, but before the hearing on respondent's motion to dismiss, the proposed transactions were completed but the organization's exemption was not revoked. In holding that we did not have jurisdiction to issue a declaratory judgment under section 7428, we stated that section 7428 was enacted to provide prompt judicial review for organizations faced with respondent's withdrawal of advance assurance of deductibility of contributions. We found that the loss of a deduction for contributions was not present with respect to the petitioner because its section 501(c)(3) exemption had not been revoked at the time of the hearing on the motion to dismiss. Furthermore, we saw petitioner's action as premature because respondent had not spoken finally with respect to its status. In this respect, we commented:

We recognize the likelihood that respondent may in fact eventually revoke petitioner's tax-exempt status. Although such a revocation would be consistent with respondent's ruling, the ruling itself does not state that revocation will definitely follow. It merely states that completion of the proposed transaction would jeopardize petitioner's status. As such, we believe it premature and unnecessary to review respondent's tentative position. When and if respondent in fact revokes petitioner's tax-exempt status and petitioner exhausts his administrative remedies under section 7428(b)(2), we will accept jurisdiction to review respondent's revocation determination if the other jurisdictional prerequisites are satisfied. * * * [72 T.C. at 376.]

The issue before the Fifth Circuit in *CREATE, Etc., Inc. v. Commissioner, supra,* was whether the Tax Court had jurisdiction under section 7428 to hear a declaratory judgment action with respect to respondent's ruling that an organization, which had qualified as a nonprivate foundation under sections 509(a)(1) and 509(a)(3), could not treat contributions from a

particular foundation as contributions from the general public. The effect of the ruling was that under section 1.170A–9(e)(6), Income Tax Regs., the foundation's contributions in excess of 2 percent of CREATE's total support could not be counted toward the 33⅓ percent public support requirement imposed by section 509(a)(1). We dismissed the petition and the Fifth Circuit affirmed. The Fifth Circuit accepted the Service's general position that "only if the taxpayer receives a ruling that it is not entitled to an initial classification or a continuing classification as a non-private foundation is it entitled to seek recourse under §7428(a)(1)." *CREATE, Etc., Inc. v. Commissioner, supra* at 811.

Like the two cases discussed above, *Urantia Foundation v. Commissioner, supra*, involved a taxpayer that had been initially determined to be an exempt organization. Subsequently, the foundation requested respondent to rule that a chain of bookstores, which was a regular purchaser of its books, would not be considered for purposes of applying the support tests of section 509(a)(2)(A). The foundation petitioned this Court to review the adverse ruling. The Seventh Circuit, in upholding our dismissal of the petition, said:

While the Foundation argues that the ruling will affect its tax status, that contention is speculative and beyond the scope of the administrative record. It is settled law that an actual controversy, in the context of declaratory judgment actions, must be one which exists in fact and not one which may occur in the future. * * * [684 F.2d 521 (7th Cir. 1982).]

The case before us now is somewhat different than the cases discussed above because here we are dealing not with respondent's final ruling that a proposed activity would jeopardize an organization's exemption; rather, we are dealing with the effect of petitioner's agreement not to undertake certain activities, which were required to obtain a favorable final ruling. Although not directly on point, we believe the rationale on which these three cases are based is pertinent here. In denying review to exempt organizations seeking to engage in activities which respondent has ruled would jeopardize their exempt status, we have interpreted the jurisdictional grant of section 7428 narrowly. Organizations which have an exempt status have been left with only one means of obtaining judicial review: to engage in the proposed activities despite respondent's adverse ruling, thereby to risk revocation, and to test

respondent's position in court in the event of actual revocation. We have stressed the need for petitioner to have actually obtained from respondent an adverse final ruling.[2]

Petitioner accepts that *New Community* prevents an organization already recognized as tax exempt from obtaining judicial review of an adverse ruling on a proposed transaction other than by actually performing the proposed transaction. But petitioner argues we must find jurisdiction here to counter the restrictive impact of *New Community*. Petitioner asserts that case law supports its position that a determination that is favorable on its face may be seen in actuality as an adverse determination for purposes of finding section 7428 jurisdiction. The primary authority relied upon by plaintiff is *Friends of Soc. of Servants of God v. Commissioner*, 75 T.C. 209 (1980), which involved an organization that had applied for a ruling that it was a nonprivate foundation on the ground that it was a church under sections 509(a)(1) and 170(b)(1)(A)(i). Respondent refused to rule that the organization was a church but found instead that it could reasonably be expected to be a publicly supported organization exempt under sections 509(a)(1) and 170(b)(1)(A)(vi). The organization sought a declaratory judgment that it was a church and entitled to a determination to that effect. In denying respondent's motion to dismiss, we reasoned that even though the organization might ultimately be classified as a nonprivate foundation, the determination was in fact adverse in important respects. The ruling imposed terms concerning continuing public support tests on the organization's nonprivate foundation classification that would not have been imposed on a church. In *CREATE, Etc., Inc. v. Commissioner, supra*, the Fifth Circuit recognized that generally a court will have jurisdiction under section 7428 only if the Service has issued an adverse determination. However, in referring to the *Friends* case, it recognized one caveat to the general rule. The court saw *Friends* as standing for the proposition that the receipt of a favorable ruling on a nonprivate foundation status that is a

---

[2]An exception to this requirement that the organization actually obtain an adverse final ruling exists when jurisdiction is invoked under sec. 7428(a)(2) on the ground that respondent has failed to make a determination as to initial or continuing qualification. See *Gladstone Foundation v. Commissioner*, 77 T.C. 221 (1981).

different and less advantageous status than the one subject to the ruling request will give rise to an actual controversy and form the basis for jurisdiction under section 7428.

Petitioner claims that *Friends* and the caveat in *CREATE* are on point here because only after it agreed to not engage in the consulting and management services described in its initial ruling request did it receive a favorable determination. It equates this agreement not to engage in consulting or management services with the type of conditions imposed on the recipient organization in the *Friends* case. We believe, however, that petitioner's reliance on *Friends* is misplaced. Unlike *Friends*, this case does not involve a failure by respondent to rule on the requested classification or a unilateral classification under a less advantageous statutory section that imposes more burdensome conditions or requirements than under the section requested by the organization.

As we noted in *Gladstone Foundation v. Commissioner*, *supra* at 227, and *Thompson v. Commissioner*, 71 T.C. 32, 38–39 (1978), in interpreting the "actual controversy" requirement, this Court should look to the standards imposed by Article III courts before allowing suit to be brought under 28 U.S.C. sec. 2201. The leading expression of the standard used by Article III courts in determining whether to entertain a claim for declaratory relief is set forth in *Md. Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941), as follows:

Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. * * *

Here, the parties do not appear to have adverse legal interests. Petitioner stated that its plan to undertake the consulting and management services was withdrawn. This modification of the ruling request eliminated the source of disagreement between it and respondent. Petitioner then received a favorable ruling. Taking a narrow view of the record, were we to address what effect petitioner's providing consulting and management services might have upon its exempt status, we would appear to be issuing an advisory opinion with respect to a transaction petitioner has in fact agreed not to undertake. It has long been recognized that the power to issue declaratory judgments does not extend to advisory opinions on abstract or hypothetical

facts, which do not involve any case or controversy in the constitutional sense. See *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–241 (1937).

Petitioner maintains that it never voluntarily agreed to refrain from performing the proposed consultation and management services. Therefore, it did not in legal effect agree to the limitation. Petitioner points out that interest on $63 million of bonds used to finance the development of Energy Park would not be exempt from tax if petitioner had not received section 501(c)(3) recognition when the bonds were assigned to it and that circumstances required that such assignment take place before the commencement of construction of the Energy Park. Since the start of construction was imminent, petitioner had no choice but to agree to the "conditions" imposed by respondent in order to obtain a ruling favorable on its face.[3]

If petitioner's circumstances were similar to that of the petitioner in *Friends of Soc. of Servants of God v. Commissioner, supra,* we might have a basis for finding the continued existence of a controversy. But we consider this procedure to be, in effect, a shortcut by petitioner to the filing of a new ruling request as to the effect on its exempt status of undertaking to offer the described counseling and management services at cost. Even if we assume an adverse ruling would issue in response to such a request, nevertheless, under *New Community,* petitioner would not be entitled to our review. Thus, our refusal to find a justiciable controversy here is not tantamount to forcing petitioner to seek further and patently fruitless administrative review simply to demonstrate the existence of an actual controversy which we would have the jurisdiction to consider. We do not at this date have a clean slate upon which to write.[4]

---

[3]Petitioner has argued that it accepted the conditions imposed by respondent under protest. We do not find on this record, however, that petitioner maintained its protest. In our view, its agreement to respondent's conditions eliminated the then-existing controversy.

[4]We sympathize with petitioner's plight here, as well as with that of taxpayers in the situation considered in *New Community Sr. Citizen Housing v. Commissioner,* 72 T.C. 372 (1979). In both situations, taxpayers realistically knew they would not be recognized by respondent as exempt organizations if they engaged in particular proposed activities but could obtain judicial review of respondent's position only after actually losing such recognition. This is a harsh price to pay to obtain judicial review, but we note that prior to

Petitioner is correct in pointing to the fact that it is now left essentially without a remedy with respect to the proposed transaction.[5] Petitioner could undertake the proposed activity, have its determination letter revoked, and then petition this Court, but under petitioner's particular circumstances that is not a viable remedy. That, however, is simply the result of the limited scope of the review of respondent's ruling process given to this Court by section 7428.

*An appropriate order will be entered.*

---

the enactment of sec. 7428, it was the only available route to judicial review. Although it can be argued as a matter of policy that taxpayers in these situations should not be deprived of the right to declaratory judgment review where the "case or controversy" requirement is met, this Court has interpreted the statutory language to preclude jurisdiction in this circumstance.

[5]It would seem, however, that petitioner or its parent is not entirely without remedy. We know of no reason why a new entity could not be formed to undertake the activities denied to petitioner by respondent's ruling. Presumably, respondent would rule adversely, thus permitting a review of respondent's position by this Court.