HIGH ADVENTURE MINISTRIES, INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4585–82X.     Filed January 25, 1983.

*Ronald J. Maciel,* for the petitioner.
*Bernard Oster,* for the respondent.

## OPINION

NIMS, *Judge*: Petitioner brought an action for a declaratory judgment pursuant to section 7428[1] and Rule 211 on the ground that respondent failed to make a determination with respect to petitioner's continuing qualification as an organization exempt from taxation under section 501(a) and described in sections 501(c)(3) and 170(b)(1)(A). This case is before us on respondent's motion to dismiss for lack of jurisdiction on the ground that petitioner did not request a redetermination of its qualification as an exempt organization or, alternatively, that petitioner has not exhausted its administrative remedies.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended. All references to Rules are to the Tax Court Rules of Practice and Procedure, except as hereinafter noted.

Based on the undisputed allegations of the petition and copies of four letters introduced by the petitioner,[2] the pertinent facts for the purposes of this motion are as follows.

Petitioner is a California nonprofit corporation whose principal place of business was at Northridge, Calif., at the time the petition was filed.

On April 16, 1973, respondent issued a determination letter approving petitioner's application to receive recognition of its exempt status as a church described in section 170(b)(1)(A)(i).

As one of its activities, petitioner operates a missionary radio station in "Free Lebanon" whose broadcast facilities are occasionally used by Major Saad Haddad, "President of Free Lebanon." Under the Carter Administration, the U.S. State Department unsuccessfully attempted to persuade petitioner to shut down these broadcast facilities. In a July 10, 1980, article by columnist Jack Anderson, the following sentence appeared: "At least one concerned member of Congress has requested an IRS investigation of High Adventure Ministries to determine if it is violating its religious tax exempt status by engaging in political activities."

On or about July 28, 1980, the Los Angeles district of the Internal Revenue Service notified petitioner that it was to be investigated.

On October 8, 1980, the District Director for the Los Angeles key district wrote to petitioner asking it to respond to certain questions. On October 22, 1980, petitioner's attorney wrote to the District Director objecting to the series of question, indicating that petitioner considered the questions to constitute an examination of it in violation of the Constitution and

---

[2]Respondent moved to dismiss this case prior to filing his answer. Accordingly, respondent as yet has neither admitted nor denied the numerous allegations in the petition. The facts above which we derive from the petition, however, were not disputed in respondent's motion.

The remaining facts we derive from copies of four letters introduced by the petitioner (two attached to the petition and two attached to petitioner's objection to respondent's motion). Respondent did not dispute the authenticity of these documents or the accuracy of statements contained therein referring to other correspondence between the parties. As the four letters constitute a part of the correspondence between the parties, they would constitute a part of the administrative record in this case. Rule 210(b)(11). Ordinarily, it should be noted, an index to the contents of the administrative record is submitted by the respondent at the time he files his answer; Rule 213(a)(3); the administrative record itself is filed with the Court within 30 days after service of the answer. Rule 217(b).

the procedural statutory safeguards afforded churches under section 7605(c). The questions were not answered.

On December 5, 1980, the District Director again wrote the petitioner, assuring the petitioner that the Internal Revenue Service was only attempting to obtain information necessary to administer the provisions of the Internal Revenue Code which provide for exemption from Federal income tax. The District Director repeated his request that petitioner answer the questions and stated:

If you fail to respond to this second written request for the necessary information, you will have failed to support your claim that your organization is described in Section 501(c)(3) of the Internal Revenue Code. Accordingly, we may conclude that your organization is not of the kind described in Code section 501(c)(3), and we may withdraw our formal recognition of your exemption. We would therefore appreciate your cooperation in this matter.

By a letter dated March 27, 1981, the acting Regional Commissioner for the Western Region notified the petitioner that he had authorized the Los Angeles district to examine petitioner's books and religious activities under the provisions of sections 7602 and 7605(c). On April 19, 1981, petitioner's attorney wrote a letter to the Commissioner of Internal Revenue in Washington, D.C., requesting a ruling "that such authorization was improperly granted and that said authorization be withdrawn." This letter then went on to describe petitioner's operation of its radio station in "Free Lebanon" and the station's possible use by Major Saad Haddad. Petitioner's attorney argued that the alleged use of the radio station was not political action on behalf of a "candidate for public office" as that term is used in section 501(c)(3). The letter further went on to accuse the Internal Revenue Service of conducting a politically motivated audit of petitioner in order to destroy petitioner. Petitioner's attorney argued that under section 7605(c), an audit of a church may only be conducted where reasonable cause to believe the church is engaging in prohibited activity exists and that no such reasonable cause existed in the case of petitioner.

In the closing paragraphs of this letter, petitioner's attorney wrote:

Another area which bears passing comment is that of the revocation by the Internal Revenue Service of Ministries exempt status. Since Ministries is

an organization described in §170(b)(1)(A)(i)—a church—it need not have applied for recognition of its exempt status [§508(c)]. Congress clearly granted the recognition of that status without the necessity of seeking I.R.S. approval. The fact that Ministries did apply for and receive such recognition does not in any way constitute a waiver of any statutorily or constitutionally granted rights.

Ministries is now, and at all relevant times has been, operating consonant with its status under §501(c)(3) and §170(b)(1)(A)(i). Since Major Saad Haddad is not in fact a candidate for public office within the meaning of that term as used in the Internal Revenue Code, no prohibited conduct would result from his unfettered substantial use of the broadcast facilities. In actuality, the use is de minimis and proof thereof is already in the possession of U.S. government agencies. The audit in this case was conceived by and is being continued in, an impermissible politically motivated manner. No reasonable cause exists for commencing or continuing an audit of Ministries.

Accordingly, it is respectfully requested that the letter from the Acting Regional Commissioner dated March 27, 1981 to Ministries be withdrawn and the authorization to examine Ministries be denied.

On September 25, 1981, petitioner's attorney wrote a letter to the Examination Branch of the Exempt Organizations Division of the Office of the Assistant Commissioner (Employee Plans and Exempt Organizations) in Washington, D.C. This letter, in its entirety, stated:

I have received your letter dated August 6, 1981, in response to a request for a ruling previously made. In your letter it was stated that the action taken by the Western Region in relation to my client was proper. The letter did not indicate that in fact a ruling on the original request dated April 19, 1981, was made. If it was so intended, the original request also asked for a hearing thereon, but no such hearing has been profferred [sic]. Because there appears to be some misunderstanding in this situation, I would like to restate the request so that a definite stated decision on this matter can be made.

On the information presented to you:

1. Does the phrase "candidate for public office" have the same meaning in §501(c)(3) as it does in §41?

2. Does full scale involvement on behalf of a candidate for a foreign political office constitute intervention or participation in a "political campaign on behalf of any candidate for public office" as that phrase is used in §501(c)(3)?

3. Can a §170(b)(1)(A)(i) organization be subjected to audit when the only reason therefor is political pressure(s)?

4. If the answer to #3 is yes, how is the situation at all different from the abuses manifested in the Watergate scandal?

5. Can an audit of a §170(b)(1)(A)(i) organization be authorized under §7605(c) without there being *objective reasonable cause* to believe that the organization has violated the status originally granted to it?

6. What legitimate audit purpose is served by the Service's request for the names and addresses of contributors?

7. Can the I.R.S. audit an organization and request information that either the I.R.S. or some other government agency already has in its possession?

8. Can an audit of a §170(b)(1)(A)(i) organization be authorized under §7605(c) when Federal agencies already possess information which would negate any reasonable cause for such audit?

I trust that this sufficiently delineates the request so that a ruling thereon would be forthcoming. If it is contemplated that an adverse ruling is to be issued, it is requested that a hearing thereon be held.

## On December 16, 1981, an Internal Revenue agent, exempt organization specialist, working in the Los Angeles District Director's office responded to petitioner's letter of September 25, 1981, in the following letter:

Your letter has been referred to me for appropriate action. I have been advised that our National Office and Regional Office will not respond to the questions posed in your letter.

Your letter refers to section 41 of the Internal Revenue Code of 1954 for the meaning of the term "candidate for public office" for purposes of section 501(c)(3). For purposes of sections 170 and 501(c)(3), the term "candidate for public office" is defined in section 1.501(c)(3)–1(c)(3)(iii) of the Income Tax Regulations.

It appears that you are aware of information concerning the organization in the possession of other Federal agencies that I am not aware of. If other Federal agencies do have such information, it would be extremely difficult for me to obtain. As you know, every organization which is exempt from tax, whether or not it is required to file an annual information return, is required by section 1.6033–2(h)(2) of the regulations to submit such additional information as may be required by the Internal Revenue Service for the purpose of inquiring into its exempt status and administering the provisions of subchapter F (section 501 and following), chapter 1 of subtitle A of the Code.

It appears that the principal issues to be resolved by my examination are whether the organization has engaged in activities which are illegal or otherwise contrary to public policy, precluding exemption from tax as an organization described in section 501(c)(3) of the Code, and/or whether it is a "church" (within the meaning of section 170(b)(1)(A)(i)) or other organization which is not required to file an annual return by section 6033(a) and/or which is subject to the provisions of part III of subchapter F of chapter 1 of the Code (relating to taxation of business income).

I would like to begin the examination during the week of January 25, 1982. Please call me (after January 10, 1982) before January 19, 1982, to make arrangements for the date, time, and location for the examination.

Except as otherwise provided in section 6501 of the Code, the limitation period prescribed by law for assessing tax for the 1978 tax year may expire soon, and I am required to solicit a consent to extend the limitation period at

this time. By extending the limitation period, the organization will have sufficient time, if it chooses, to exercise its administrative appeal rights in the event an adverse determination concerning its exempt status and/or a tax liability is recommended.

I would appreciate your extending the limitation period by signing both copies of the enclosed FORM 872 and returning them to me by January 11, 1982. Please use the enclosed self-addressed envelope for this purpose. Upon acceptance of the consent, a copy will be returned to you for your records.

On March 1, 1982, petitioner filed a petition in this Court invoking our jurisdiction under section 7428. Petitioner prayed that this Court declare: (1) That Major Saad Haddad was not a "candidate for public office" within the meaning of section 501(c)(3); (2) that objective, reasonable cause (and not merely political reasons) must exist before respondent may examine a church under section 7605(c); (3) that respondent has no such reasonable cause in petitioner's case; (4) that petitioner's exempt status is not affected by the use of its broadcast facilities by Major Haddad; and (5) that petitioner is still entitled to its exempt status under section 501(c)(3). In addition to this declaratory relief, petitioner requested that respondent be permanently enjoined from auditing or investigating petitioner without our approval.

Respondent moved to dismiss the petition for lack of jurisdiction on the ground that petitioner had not previously requested from him a redetermination of its exempt status or, alternatively, that petitioner had not exhausted its administrative remedies. Petitioner argues that its April 19, 1981, letter or, alternatively, its September 25, 1981, letter constituted its request for a determination. Further, petitioner contends respondent has failed to act on its request for over 270 days and has refused it either National Office or Regional Office consideration. Consequently, petitioner argues, it has exhausted its administrative remedies.

At the outset, we note that where the respondent has failed to issue a notice of determination, the burden of proof with respect to jurisdictional matters under section 7428 is on the petitioner. Rule 217(c)(2)(i). In addition, we are not limited in our jurisdictional inquiry to the arguments raised by the respondent in his motion. The parties may not invoke this Court's jurisdiction by consent or concession. See *B.H.W. Anesthesia Foundation, Inc. v. Commissioner*, 72 T.C. 681, 682 n. 2 (1979). Accordingly, here, as in *B.H.W. Anesthesia Founda-*

*tion*, we must make our own independent review of the record to determine whether all of the jurisdictional prerequisites of section 7428 have been met.

Section 7428[3] vests in the Tax Court the authority to make declarations with respect to the initial or continuing qualification of organizations as organizations exempt from tax described in either section 501(c)(3) or section 170(c)(2). This jurisdiction is a limited one, however. It is limited to instances where the respondent has issued an adverse determination letter or where, after a request by the organization and an exhaustion of administrative remedies, the respondent has failed to issue a determination letter. In addition, our section 7428 jurisdiction is limited to "actual controversies" relating to the organization's qualification. We may not rule, under our declaratory judgment jurisdiction, on a dispute merely because

---

[3]Sec. 7428 provides, in relevant part:

SEC. 7428. DECLARATORY JUDGMENTS RELATING TO STATUS AND CLASSIFICA-
TION OF ORGANIZATIONS UNDER SECTION 501(c)(3), ETC.

(a) CREATION OF REMEDY.—In a case of actual controversy involving—

(1) a determination by the Secretary—

(A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),

\* \* \* \* \* \* \*

(2) a failure by the Secretary to make a determination with respect to an issue referred to in paragraph (1),

upon the filing of an appropriate pleading, the United States Tax Court, the United States Court of Claims, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification or continuing qualification or with respect to such initial classification or continuing classification. Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Claims, as the case may be, and shall be reviewable as such. For purposes of this section, a determination with respect to a continuing qualification or continuing classification includes any revocation of or other change in a qualification or classification.

(b) LIMITATIONS.—

\* \* \* \* \* \* \*

(2) EXHAUSTION OF ADMINISTRATIVE REMEDIES.—A declaratory judgment or decree under this section shall not be issued in any proceeding unless the Tax Court, the Court of Claims, or the district Court of the United States for the District of Columbia determines that the organization involved has exhausted administrative remedies available to it within the Internal Revenue Service. An organization requesting the determination of an issue referred to in subsection (a)(1) shall be deemed to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination with respect to such issue at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination.

it is between an exempt organization and the Internal Revenue Service. See *Urantia Foundation v. Commissioner*, 684 F.2d 521 (7th Cir. 1982), affg. 77 T.C. 507 (1981); *CREATE, Etc., Inc. v. Commissioner*, 634 F.2d 803 (5th Cir. 1981), affg. an unpublished order of this Court; *Ohio County and Independent Agriculture Societies v. Commissioner*, 610 F.2d 448 (6th Cir. 1979), affg. an unpublished order of this Court; *AHW Corp. v. Commissioner*, 79 T.C. 390 (1982); *New Community Senior Citizen Housing Corp. v. Commissioner*, 72 T.C. 372 (1979).

When the Commissioner has reason to doubt whether an organization previously determined to be exempt remains entitled to its exempt status, a key district Office[4] of the Internal Revenue Service conducts an investigation. If the key District Director concludes that the organization's exemption ruling or determination letter should be revoked or modified, he will advise the organization, in writing, of the proposed action and the reasons therefor. Sec. 601.201(n)(6)(ii)(*a*), Statement of Procedural Rules (hereinafter Procedural Rules). At the same time, the key District Director will advise the organization of its right to protest the proposed revocation by requesting Appeals Office consideration. Sec. 601.201(n)(6)(ii)(*b*), Procedural Rules.

Where the organization seeks to protest the proposed action, the Procedural Rules require that the organization must submit to the key District Director, within 30 days, a statement of the facts, law, and arguments in support of its continued exemption. Sec. 601.201(n)(6)(ii)(*b*), Procedural Rules. Under the Procedural Rules, the organization must also state whether it wishes an Appeals Office conference. Upon receipt of an organization's request for Appeals consideration, the key district Office will, if it maintains its position, forward the request and case file to the Appeals Office.

In certain cases, the key District Director or Appeals Office must request technical advice from the National Office; in other cases, the organization may request the key District Director or Appeals Office to seek National Office technical advice. Sec. 601.201(n)(6)(ii)(*a*) and (*e*), Procedural Rules.

---

[4]For purposes of issuing proposed determination letters regarding exempt status, the country is divided into 19 key districts. These key districts are set out at sec. 601.201(n)(1)(i), Statement of Procedural Rules.

Ultimately, if an appeal is not taken or is unsuccessful, a final notice of revocation will be issued. Sec. 601.201(n)(6)(ii)(*c*), Procedural Rules.

Section 7428(b)(2) provides that an organization will be deemed to have exhausted its administrative remedies in an attempt to secure a determination if, after 270 days, the respondent has not issued a determination and the organization has taken, in a timely manner, all reasonable steps to secure a determination. Sec. 601.201(n)(7)(iv), Procedural Rules, states that in order to have exhausted the administrative remedies available in the Internal Revenue Service for purposes of section 7428(b)(2), an organization must have pursued all administrative appeals available within the Service and complied with all requests for additional information.

In *Gladstone Foundation v. Commissioner*, 77 T.C. 221 (1981), a nonprivate foundation had received a notice of proposed revocation of its exemption from a key District Director. The foundation submitted a proper protest to the key District Director and pursued its appeal both with the Regional Office and the National Office, submitting all documents requested by those Offices. No final ruling, however, was forthcoming. More than 270 days after it filed its protest, the foundation petitioned the Tax Court under section 7428 on the ground that the respondent had failed to make a final determination as to its continued qualification as an exempt nonprivate foundation. The respondent moved to dismiss for lack of jurisdiction, arguing that an already exempt organization could only obtain relief under section 7428 if it had either (1) received a final notice of revocation or (2) filed a new request for a determination on which respondent had not acted for more than 270 days. Respondent contended we lacked jurisdiction because the foundation had not received a final notice of revocation or filed a new request for a determination.

In *Gladstone Foundation*, we rejected respondent's argument. Instead, we held that the organization's protest of the key District Director's notice of proposed revocation should be treated as a request for a determination for purposes of section 7428. Since 270 days had elapsed since that protest was submitted and since the respondent had not acted (although petitioner had completed the administrative appeals process),

we held that our jurisdiction under section 7428 was properly invoked.

As is evident from the letters petitioner has introduced herein, petitioner is in a far different procedural setting than was the organization in *Gladstone Foundation*. In the instant case, the key District Director is still at the stage of the administrative process that occurs prior to the issuance of a notice of proposed revocation—i.e., he is still attempting to investigate petitioner.

The key District Director's letter of December 5, 1980, cannot be construed as a notice of proposed revocation. It contains no statements proposing that the petitioner's exemption should be revoked or explaining the reasons therefor. See sec. 601.201(n)(6)(ii)(*a*), Procedural Rules. Nor does the letter inform petitioner of any right to appeal. See sec. 601.201(n)(6)(ii)(*b*), Procedural Rules. The letter merely attempts to solicit information from petitioner and warns petitioner that a failure to provide such information *may* lead to withdrawal of its exemption.

Petitioner, admittedly, has not supplied that information to the key District Director, but there is no evidence in this record that the key District Director has ever gone through with his threat and issued a notice of proposed revocation. Indeed, the December 16, 1981, letter from the District Director's office makes it clear that that Office had not yet at that date reached a decision on petitioner's status: "By extending the limitation period, the organization will have sufficient time, if it chooses, to exercise its administrative appeal rights in the event an adverse determination concerning its exempt status and/or a tax liability is recommended."

Accordingly, it seems to us that petitioner is requesting us to consider whether this mere threat to issue a notice of proposed revocation gives rise to an actual controversy regarding its exempt status within the meaning of section 7428. We think it does not.

In determining whether the "actual controversy" requirement of section 7428 is met, we look to the standards imposed by article III courts before allowing suits to be brought under 28 U.S.C. section 2201 (1976). *AHW Corp. v. Commissioner, supra* at 396; *Gladstone Foundation v. Commissioner, supra* at 227; *Thompson v. Commissioner*, 71 T.C. 32, 38–39 (1978). That

standard has been summarized by the Supreme Court as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

While there may indeed be an adverse controversy between the parties herein regarding whether petitioner should be examined, we cannot find that there exists a similar adverse controversy of sufficient immediacy and reality regarding petitioner's exempt status. The question of petitioner's exempt status is at least one step removed from the question of the examination: Even if the petitioner continues to fail to cooperate with the examination, there is no guarantee that the key District Director will determine that its exemption should be revoked. There is no assurance that the issues petitioner raises regarding its radio station and Major Haddad are of concern to respondent. It is equally not clear that respondent even disputes petitioner's position on these issues.

Section 7428 gives us jurisdiction only of actual controversies regarding exempt status. We find no grounds for believing that Congress intended this section to grant us plenary authority to supervise examinations of exempt organizations.

Petitioner argues that, if we decline to hear its case, it then lacks a forum to have its controversy regarding the propriety of respondent's examination litigated before a proposed revocation is issued. Aside from our previously expressed demurrer to petitioner's other assertions, we doubt whether petitioner's assertion regarding lack of a forum is totally accurate. We note that the Court of Appeals for the Ninth Circuit has recently held that section 7605(c) does not bar a summons requiring the production of a church's books of account in order that the IRS may determine whether the church still qualifies for tax-exempt status. In addition, the Court affirmed the District Court's decision that the church must produce its corporate minute books in order for the IRS to determine whether the church still qualified for tax-exempt status. *United States v. Coates*, 692 F.2d 629 (9th Cir. 1982). Thus, notwithstanding the Court's general disagreement with the various positions taken by the church in question, the church

obviously did not lack a litigating forum when the IRS took formal steps to compel the church's cooperation in the conduct of the examination. Nor would High Adventure Ministries, Inc., lack a forum in the event the IRS issued a summons during administrative proceedings under section 7602(2). Jurisdiction in such a case is vested in the U.S. District Court under sections 7604 and 7402(b).

In any event, we cannot enlarge the jurisdiction of this Court merely to provide petitioner with a remedy. The statute is clear on its face that the controversy which we may hear under section 7428 must relate to exempt status. At this point, we do not find existing a sufficiently adverse and immediate controversy regarding petitioner's exempt status.

We also find no merit in petitioner's argument that its April 19, 1981, and September 25, 1981, letters constituted requests for a second determination of its exempt status. These letters were not addressed to the key District Director, as proper requests for determinations should be. See sec. 601.201(n)(1)(i), Procedural Rules. In addition, although they raise issues which concern petitioner's exempt status, the only ruling the letters request is that authorization to examine petitioner be withdrawn.

Finally, with regard to the September 25, 1981, letter, 270 days had not elapsed between the time it was sent and the date the petition was filed (Mar. 1, 1982). Accordingly, even if this last letter were considered a request for a new determination, the necessary jurisdictional period in cases of respondent's failure to rule had not expired at the time the petition was filed. See sec. 7428(b)(2).

One other note. Respondent has argued that petitioner cannot be said to have exhausted its administrative remedies for a suit under section 7428 because it has not complied with section 601.201(n)(7)(iv)(b), Procedural Rules, which requires the timely submission of all additional information requested by respondent.[5] Petitioner argues that it should not have to comply with this rule, since compliance would moot its argument that respondent currently has no right to obtain such information. Having found other sufficient reasons why

---

[5]This requirement is supported by the legislative history of sec. 7428. See H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 979–980; S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 628.

we lack jurisdiction of petitioner's suit under section 7428, we decline at this time to resolve this apparent dilemma.

*An appropriate order will be entered.*