ANCLOTE PSYCHIATRIC CENTER, INC.,
PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE,
RESPONDENT

Docket No. 19530-91X.          Filed March 31, 1992.

*James D. O'Donnell, Keith H. Johnson,* and *V. Jean Owens,* for petitioner.
*Vivian A. Moore* and *Henry G. Salamy,* for respondent.

OPINION

WRIGHT, *Judge:* This matter is before the Court on respondent's motion to dismiss petitioner's petition for declaratory judgment filed pursuant to section 7428[1] on the basis that we lack jurisdiction. For the reasons set forth herein, we hold that the Court has jurisdiction over this matter and that respondent's motion to dismiss petitioner's petition for declaratory judgment must be denied.

Petitioner is a nonprofit Florida corporation recognized as exempt from Federal income tax as an organization described

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

in section 501(c)(3). In 1981, after obtaining its tax-exempt status, petitioner considered selling some of its assets to a related for-profit entity. Prior to entering this transaction, petitioner obtained a ruling from respondent's National Office dated May 27, 1982, that this sale would not jeopardize its tax-exempt status.

In approximately August 1987, respondent initiated an examination of petitioner's information returns. In this examination, respondent raised the issues of whether petitioner could continue to rely on the 1982 ruling letter and whether petitioner's tax-exempt status should be revoked. By a letter dated April 13, 1989, the District Director (Director) auditing petitioner's returns informed petitioner that he was referring these issues to respondent's National Office for technical advice. The Director was required to seek the advice of the National Office because only the National Office could revoke the prior ruling letter. See sec. 601.201(n)(9)(i)(d), Statement of Procedural Rules. The Director recommended to the National Office that petitioner's tax-exempt status be revoked.

In its April 1989 letter, the Director supplied petitioner with a copy of the facts and questions he was submitting to the National Office. On June 6, 1989, petitioner submitted a written response to the Director's proposed statement of facts and questions. On June 21, 1989, petitioner submitted an addendum to its written response. At this same time, petitioner indicated in writing that it desired a conference at the National Office if that office indicated issuing advice adverse to petitioner's position.

On April 16, 1990, petitioner had a conference at the National Office. On March 19, 1991, the National Office issued a technical advice memorandum to the Director in which it ruled that petitioner could no longer rely on the 1982 ruling letter and in which it concurred with the Director's recommendation to revoke petitioner's tax-exempt status.

On August 30, 1991, petitioner filed a petition for declaratory judgment pursuant to section 7428 requesting this Court to make a declaration regarding its continuing tax-exempt status. On November 22, 1991, respondent filed a motion to dismiss for lack of jurisdiction, and it is that motion which is presently before the Court for decision. On December 12, 1991, respon-

dent issued a final adverse determination letter to petitioner revoking petitioner's tax-exempt status.

Section 7428 specifically confers jurisdiction on this Court to make a declaration with respect to the continuing status of a tax-exempt organization. Sec. 7428; H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 977; S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 626. The specific jurisdictional requirements of section 7428 are as follows: (1) There must be an "actual controversy"; (2) the Secretary must either make a "determination" or "fail to make a determination" with respect to the initial or continuing qualification of a tax-exempt organization; (3) the organization must wait 270 days after making a "request for a determination" to file its petition if the controversy involves the Secretary's failure to make a determination; and (4) the organization must have "exhausted its administrative remedies" available to it within the Internal Revenue Service (IRS), as determined by this Court. Sec. 7428(a) and (b); Rule 210(c).

We must make our own independent review to determine whether the jurisdictional prerequisites of section 7428 have been met. *High Adventure Ministries, Inc. v. Commissioner,* 80 T.C. 292, 298 (1983), affd. 726 F.2d 555 (9th Cir. 1984). Because we conclude, as discussed *infra,* that respondent has "failed to make a determination" with respect to the initial or continuing qualification of petitioner as a section 501(c)(3) organization, we need not address whether respondent has made a "determination" on the bases asserted by petitioner. Regarding whether respondent has "failed to make a determination", this issue overlaps with the 270-day requirement; therefore, we discuss these requirements together.

(1) *"Actual Controversy"—Section 7428(a) and Rule 210(c)(2)*

"Actual controversy" is not defined by the Code, the income tax regulations, or the legislative history of section 7428. Our interpretation of the meaning of "actual controversy" comports with the general rule followed by the Federal courts. In determining whether an actual controversy exists within the meaning of section 7428, we must examine the facts as alleged to determine whether there is a substantial controversy between parties having adverse legal interests that is of sufficient immediacy and reality as to warrant the issuance of a declaratory judgment. *Gladstone Foundation v. Commission-*

*er,* 77 T.C. 221, 227 (1981) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

In the instant case, respondent examined petitioner's information returns to determine whether petitioner should still be permitted to rely on the 1982 ruling letter, and to determine whether petitioner's tax-exempt status should be revoked. The Director recommended to the National Office that petitioner's tax-exempt status be revoked. Subsequently, the National Office concurred with the Director's recommendation. The conclusions expressed in the National Office's technical advice memorandum are final, and the Director must follow them unless he immediately requests reconsideration. See sec. 601.201(n)(9)(vii)(a), sec. 601.201(n)(9)(viii)(a), Statement of Procedural Rules. The record does not indicate the Director made such a request. The Director ultimately issued his final adverse determination letter to petitioner.

Respondent argues that there was no "actual controversy" on the date petitioner filed its petition because respondent had not yet revoked or officially "proposed revocation" of petitioner's tax-exempt status. However, petitioner's continuing classification was unquestionably at issue between the parties throughout the entire administrative proceeding. After the issuance of the technical advice memorandum, final revocation was inevitable. Revocation ultimately became final after the petition was filed. There can be no other conclusion but that an actual controversy existed on the date petitioner filed its petition herein.

(2) *The Organization Must Wait 270 Days to File Its Petition After Making a "Request for a Determination" if the Controversy Involves the Secretary's "Failure to Make a Determination"—Section 7428(b)(2) and Rule 210(c)(1)*

Again, neither the statute nor the regulations define a "failure to make a determination". The legislative history of section 7428 defines a failure to make a determination as a failure to act by the IRS with respect to a request for a determination. *Gladstone Foundation v. Commissioner, supra* at 228; H. Rept. 94-658, *supra,* 1976-3 C.B. at 979; S. Rept. 94-938, *supra,* 1976-3 C.B. at 628.

Neither the statute, the income tax regulations, nor the legislative history of section 7428 defines a "request for

determination". Realistically, it is unlikely that there will have been a request for a determination in connection with a determination concerning revocation. Explanatory Note accompanying Rule 211, 68 T.C. 1040. Indeed, our research disclosed no cases in which an organization had done such. Thus, in revocation cases it is difficult to define "request for a determination". The courts must then interpret the meaning of this term.

In *Gladstone Foundation v. Commissioner, supra* at 233, we held that a written protest of a proposed revocation is deemed a request for a determination within the meaning of section 7428(b)(2). In the instant case, respondent never issued a "proposed revocation" and petitioner never filed a "written protest". Petitioner argues, however, that given the procedural status of its case, its continuous and adamant disagreement with respondent throughout the administrative process regarding its tax-exempt status should be construed as a written protest to a proposed revocation. After examining the administrative status of this case and comparing it to the administrative status of an organization that receives a proposed revocation, we conclude that the Director's April 1989 letter is, in substance, procedurally the same as a "proposed revocation" and that petitioner's written response to the April 1989 letter is, in substance, procedurally the same as a "written protest". Respondent's procedural rules indicate that if a Key Director concludes, as a result of examining a tax-exempt organization's information returns, that an organization's exemption ruling or determination letter should be revoked, he or she will advise the organization of the proposed action. Sec. 601.201-(n)(6)(ii)(a), Statement of Procedural Rules. In certain cases, the Director must first request technical advice from the National Office. *Id.* sec. 601.201(n)(6)(ii)(a) and sec. 601.201-(n)(9)(i)(c) and (d). Because only the National Office can revoke a National Office ruling letter, a Director must seek its advice before revoking a prior ruling. *Id.* sec. 601.201(n)(9)-(i)(d).

If a Director issues a "proposed revocation" to an organization, the Director must do so in writing and state his reasons therefor. *Id.* sec. 601.201(n)(6)(ii)(a). The Director is required to advise the organization of its right to protest the proposed revocation by requesting Appeals Office consideration at the

Regional and then National Office. *Id.* sec. 601.201(n)(6)(ii)(b), sec. 601.201(n)(7)(iv)(c). To request appeals consideration, the organization must submit to the Director, within 30 days, a "written protest", i.e., a statement of facts, law, and arguments in support of its continued exemption. *Id.* sec. 601.201(n)-(6)(ii)(b). Upon receipt of the organization's written protest, the Director will forward it and the case file to the Appeals Office. *Id.*

If a Director must instead request technical advice first, the Director is required to inform the organization that the matter is being referred to the National Office. Sec. 601.201(n)(9)(iii)-(b), Statement of Procedural Rules. The Director is required to advise the organization of its right to a conference at the National Office in the event an adverse decision is indicated. *Id.* sec. 601.201(n)(9)(iii)(h), 601.201(n)(9)(v)(a). The Director must furnish the organization with a copy of the statement of the pertinent facts and question(s) proposed for submission (hereinafter statement of facts and questions). *Id.* sec. 601.201(n)(9)(iii)(b). The organization must indicate in writing, within 10 calendar days, the extent to which it may not be in complete agreement with the Director's statement of facts and questions and can also submit a statement explaining its position on the issues, citing relevant precedents (hereinafter the organization's statements will be referred to as its written response). *Id.* sec. 601.201(n)(9)(iii)(c), (g). Upon receipt of the organization's written response, the Director will forward it to the National Office with the Director's request for advice. *Id.* sec. 601.201(n)(9)(iii)(c), (g). After its conference at the National Office, the organization has no more administrative appeals available. *Id.* sec. 601.201(n)(9)(v)(b).

In the instant case, in April 1989, the Director followed this latter procedural course. However, as discussed in the following paragraphs, petitioner's procedural position would have been almost the same had respondent instead issued a proposed revocation letter.

First, the essential information contained within respondent's April 1989 letter and attachments is the same as that contained within a proposed revocation letter. That is, upon the issuance of a proposed revocation letter, the Director informs the organization that respondent is considering revoking the organization's tax-exempt status and explains the

reasons therefor. Similarly, upon the issuance of the April 1989 letter and its attachments, the Director informed petitioner that respondent was considering revoking its tax-exempt status. Because petitioner had received a copy of the Director's statement of facts and questions, the Director had explained his reasons therefor. In both instances, the Director has concluded, as a result of examining an organization's returns, that the organization's tax-exempt status should be revoked.

Additionally, the essential information contained within petitioner's written response to respondent's statement of facts and questions is the same as that contained within a written protest to a proposed revocation. That is, an organization's written protest contains a written statement of facts, law, and arguments in support of the organization's continued exemption. Similarly, petitioner's written response contained a statement indicating the extent to which it disagreed with the Director's proposed statement of facts and questions, and a statement setting forth its position in support of its continued exemption. In both instances, the organization has submitted an initial written statement in support of its continued exemption.

Finally, in both instances, the organization has its ultimate appeal at the National Office level. Upon the issuance of a proposed revocation, an organization has a right to appeal the Director's decision to the Regional Office and then to the National Office. Similarly, upon the issuance of the April 1989 letter, petitioner had a right to a conference with the National Office should the National Office concur in the Director's recommendation to revoke petitioner's tax-exempt status. Petitioner had no other administrative appeals available after this conference. In both instances, the National Office will have the final review of the Director's decision before revocation becomes final.

We conclude that the Director's April 1989 letter is, in substance, the same as a proposed revocation letter and that petitioner's written response is, in substance, the same as a written protest. Because a written protest to a proposed revocation is a "request for a determination" within the meaning of section 7428(b)(2), we conclude that petitioner's written response is a "request for a determination" within the

meaning of section 7428(b)(2). See *Gladstone Foundation v. Commissioner,* 77 T.C. at 233. Eight hundred days had elapsed from the date petitioner submitted its written response on June 21, 1989, until petitioner filed its petition herein. When petitioner filed its petition, respondent still had not revoked petitioner's tax-exempt status. Thus, respondent failed to act with respect to petitioner's request for a determination within 270 days.

We have also examined the purposes of the 270-day requirement to determine whether petitioner had "requested a determination" within the meaning of section 7428 to which respondent failed to timely respond. This jurisdictional requirement is part of the section 7428 exhaustion of administrative remedies prerequisite the purposes of which are twofold, i.e., (1) to provide the Court with a full and complete administrative record on which to base its decision, and (2) to avoid the premature interruption of the administrative process. *McKart v. United States,* 395 U.S. 185, 193 (1969); *Gladstone Foundation v. Commissioner, supra* at 232-233; *Prince Corp. v. Commissioner,* 67 T.C. 318, 327 (1976).

In the instant case, upon referral of petitioner's case to the National Office, the Director had completed his investigation regarding petitioner's continuing tax-exempt status and submitted all his facts and issues to the National Office. Petitioner had submitted its written response to the National Office which contained its statement of facts and statement of position. If petitioner proposed any new data, line of reasoning, precedents, etc. at the conference, it was required to submit a written record to the National Office. See sec. 601.201(n)(9)(v)(d), Statement of Procedural Rules. The record does not indicate that petitioner did such. Therefore, the relevant facts upon which a determination could be made were fixed between the parties upon referral of the matter to the National Office. Accordingly, at this point there was a full and complete administrative record available on which to base a decision regarding petitioner's continuing tax-exempt status.

However, interruption of the administrative process at this point would be premature. The National Office must be given a reasonable amount of time to act upon the information it obtained. The National Office received the information around June 21, 1989, processed it, and held a conference with

petitioner on April 16, 1990. When the petition was filed on August 31, 1991, 800 days had elapsed since the date petitioner submitted its written response, and 501 days had elapsed since the date petitioner attended the National Office conference. Under the facts of the instant case, we conclude respondent had more than a reasonable amount of time to process petitioner's case. Therefore, petitioner did not prematurely interrupt respondent's administrative process when it filed its petition with this Court. In sum, both of the purposes of the 270-day jurisdictional requirement were satisfied at the time the petition was filed with this Court.

We conclude that under the facts of the instant case, when petitioner filed its petition herein, respondent failed to make a determination within 270 days of petitioner's request for a determination within the meaning of section 7428(b)(2).

(3) *The Organization Has Exhausted Its Administrative Remedies Available to It Within the IRS—Section 7428(b)(2) and Rule 210(c)(4)*

The legislative history of section 7428 admonishes that a taxpayer must satisfy all procedural requirements within the IRS before it will be deemed to have exhausted all available administrative remedies. H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 979; S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 628. Respondent's procedural rules provide that an organization will be deemed to have exhausted its administrative remedies for purposes of section 7428(b)(2) only if it has taken timely, reasonable steps to secure a determination. Sec. 601.201(n)(7)-(iv), Statement of Procedural Rules. Those steps and administrative remedies that must be exhausted within the IRS are the filing of a substantially completed Form 1023, the timely submission of all requested additional information, the exhaustion of all administrative appeals available within the IRS, the issuance of a notice of final determination or the expiration of the 270-day period prescribed in section 7428(b)(2), and the lapse of a reasonable amount of time for respondent to act upon an appeal or request for consideration. *Id.* sec. 601.201-(n)(7)(iv)-(vi).

In its application, petitioner has filed its Form 1023. The record does not indicate that petitioner refused to submit or untimely submitted any requested information. After the

National Office conference, petitioner had no more administrative appeals available. As discussed *supra,* the 270-day period prescribed by section 7428(b)(2) had expired, and respondent had more than a reasonable amount of time to act on petitioner's case at the time petitioner filed its petition for declaratory judgment. We note also that petitioner precisely followed the administrative avenues available to it within the IRS, and there is no indication that petitioner unduly protracted the administrative proceedings. Petitioner took all reasonable steps to secure a determination. When petitioner filed its petition herein, it had satisfied all of respondent's procedural requirements.

On these bases and giving consideration to our discussion regarding the purposes underlying the 270-day jurisdictional requirement, we determine that petitioner had exhausted its administrative remedies available to it within the IRS when it filed its section 7428 petition. Accordingly, having satisfied all the jurisdictional requirements prescribed by section 7428 and our procedural rules, we conclude that we have jurisdiction over petitioner's petition for declaratory judgment.

> *An appropriate order will be issued denying respondent's motion to dismiss for lack of jurisdiction.*