T.C. Memo. 1995-595


UNITED STATES TAX COURT


ANCLOTE PSYCHIATRIC CENTER, INC., Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket No. 4810-92.                    Filed December 14, 1995.


<u>James D. O'Donnell</u> and <u>V. Jean Owens</u>, for petitioner.

<u>Julie M.T. Foster</u>, for respondent.


MEMORANDUM OPINION


WRIGHT, <u>Judge</u>:  This matter is currently before the Court on
petitioner's Motion For Partial Summary Judgment under Rule 121.[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect during the years at issue,

Respondent determined deficiencies in petitioner's Federal income tax for taxable years 1984 through 1988 as follows:

| Year | Deficiency |
|------|-----------|
| 1984 | $159,008 |
| 1985 | 110,623 |
| 1986 | 75,490 |
| 1987 | 45,444 |
| 1988 | 62,041 |

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). The facts presented below do not appear to be in dispute and are stated

and all Rule references are to the Tax Court Rules of Practice and Procedure.

solely for purposes of deciding the motion and are not findings of fact for this case.  Fed. R. Civ. P. 52(a); <u>Sundstrand Corp. v. Commissioner</u>, <u>supra</u> at 520.

<u>1.  Background</u>

Petitioner was originally incorporated in 1951 as a for-profit corporation to operate a long-term care psychiatric hospital in Tarpon Springs, Florida.  Petitioner later amended and restated its articles of incorporation in 1957 to become a nonprofit corporation.  During the years at issue, petitioner's principal place of business was Tarpon Springs, Florida.

In 1981, petitioner proposed to sell its assets to a Florida for-profit organization established and owned by members of petitioner's board of directors.  Prior to entering this transaction, petitioner obtained a letter ruling from the National Office of the Internal Revenue Service (IRS) dated May 27, 1982, stating that, under the facts alleged by petitioner in its request for a ruling, the sale of its assets would not jeopardize its tax-exempt status.  In 1983, petitioner sold the assets to its board of directors for $6,318,000; the sale price included a $1,818,000 liability assumption by the board of directors.  Two years later, the board of directors sold the assets to an unrelated third party for $29,587,000.  On its 1983 return, petitioner reported a total sale price of $4,500,000.

As a result of these transactions, a RICO civil action suit was filed in the U.S. District Court of the Northern District of

Florida against the board of directors.  Thereafter, the attorney general for the State of Florida sued the same board of directors on the theory that petitioner sold its assets to its board members for less than fair market value and, therefore, violated a Florida statute designed to prevent the improper use of any nonprofit corporation.  The State and Federal court proceedings generated a vast amount of media coverage and publicity, and as a direct result thereof, a revenue agent employed in the exempt organization division of the IRS initiated an examination of petitioner in 1987.  During this examination, respondent raised the issues of whether petitioner could continue to rely on the 1982 ruling letter and whether petitioner's tax-exempt status should be revoked.

In a technical advice memorandum, issued to petitioner on April 29, 1991, the National Office determined that petitioner did not receive fair market value for the sale of its hospital facility and proposed to revoke its tax-exempt status. Respondent later issued a final adverse determination letter on December 12, 1991, revoking petitioner's status as an organization described in section 501(c)(3) effective for all years beginning on and after October 1, 1982.  Simultaneously with the formal notice of revocation, respondent issued a notice of deficiency to petitioner for the taxable periods ending September 30, 1984 through September 30, 1988.  Respondent made no determination with respect to petitioner's 1983 taxable year

as the period of limitations with respect to that year had expired.

On August 30, 1991, petitioner filed a petition for declaratory judgment pursuant to section 7428 requesting this Court to make a declaration regarding its continuing tax-exempt status. Respondent thereafter filed a motion to dismiss for lack of jurisdiction on the basis that the filing of the petition was untimely in that it did not satisfy the statutory time requirements contained in section 7428. We issued an opinion, Anclote Psychiatric Center, Inc. v. Commissioner, 98 T.C. 374 (1992), in which we held that we had jurisdiction over the instant case.

For purposes of the instant motion, petitioner concedes that respondent's revocation is valid. Both petitioner and respondent agree therefore that petitioner's income was not exempt from tax under section 501 for the years at issue in the instant case.

Petitioner claims in the instant motion that it is entitled to judgment as a matter of law with respect to (1) whether payments totaling $1,014,378.94 made by petitioner to the Florida Patients Compensation Fund (FPCF) during the years at issue are deductible as ordinary and necessary expenses under section 162, and (2) whether petitioner sustained a net operating loss in taxable year 1983, which it may carry forward to subsequent years including the years at issue. For the reasons stated herein, petitioner's motion for partial summary judgment is denied.

Respondent argues that petitioner (1) is not entitled to the amount petitioner is now claiming, for purposes of the instant motion, of $1,014,378.94 as an expense paid to the FPCF during the years at issue, and (2) did not sustain a net operating loss in taxable year 1983.

## 2. FPCF Payments

In 1975, the State of Florida enacted the Medical Malpractice Reform Act.[2] As a part of the Act, the FPCF was established to provide liability coverage in excess of basic policy limits for its member hospitals. Petitioner became a participant in FPCF during the fiscal year ending September 30, 1977. Various assessments were made against petitioner by the FPCF.

On June 20, 1985, petitioner and the FPCF entered into a settlement agreement establishing a payment schedule for petitioner's then outstanding FPCF assessments as well as subsequent assessments. The payment schedule covers what the FPCF refers to as the "fifth assessment" and all subsequent FPCF assessments including the sixth, seventh, and eighth assessments. The FPCF fifth assessment years are 1977-78, 1979-80, 1980-81, and 1981-82. The "fourth assessment" involves FPCF years 1976 through 1981. The payment schedule outlined in the settlement agreement required petitioner to pay on or before each January

---

[2]Fla. Stat., sec. 768.54.

10, April 10, July 10, and October 10, through the term of the agreement, the amounts of $72,200 for each of the first four quarterly payments, $88,400 for each of the next four quarterly payments, and $80,300 for each quarterly payment thereafter until petitioner paid the total amount of its assessments.

Petitioner claims it made payments to the FPCF totaling $1,014,378.94 from January 17, 1984 through May 25, 1988, with respect to arrears in its insurance coverage between 1976 and 1981. Petitioner, however, has not provided sufficient evidence as to the amount claimed. Moreover, even if the payments were made in the amount asserted by petitioner, it is unclear from the record the years to which the payments correspond. Petitioner argues that the FPCF payments made between 1984 and 1988 under the settlement agreement correspond to the "fourth assessment" which covers FPCF years 1976 through 1981, years in which petitioner was a tax-exempt organization under section 501. The settlement agreement, however, clearly states that the payment schedule prescribed therein covers the fifth, sixth, seventh, and eighth assessments.

Section 501(a) exempts certain organizations, including those described under section 501(c)(3), from taxation unless the exemption is denied under sections 502 or 503. Section 162(a) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.

Under section 265(1)[3], payments made to FPCF are not deductible if they are allocable to a class of exempt income. Section 265 provides the following:

No deduction shall be allowed for--

(1) Expenses.--Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle * * *.

Respondent contends that, as a section 501(c)(3) organization from 1977 to October 1, 1982, petitioner's income was exempt from tax under section 501(a) and as a result section 265(1) disallows deductions for expenses allocable to that income. Thus, respondent argues, petitioner is not entitled to deduct payments to the FPCF attributable to insurance coverage for years in which petitioner was a tax-exempt organization.

Based upon the record, we find that a dispute of material fact exists as to both the amount of the payments made by petitioner to the FPCF and the years to which these payments correspond. Petitioner argues that it is allowed as ordinary and necessary business expenses the amounts paid to the FPCF under the settlement agreement. The settlement agreement, at least in part, required petitioner to make payments for taxable years in which petitioner was an exempt organization. Petitioner argues

---

[3]Sec. 265(1) was redesignated as sec. 265(a)(1) by sec. 902(d) of the Tax Reform Act of 1986.

that the first eight quarterly payments were to cover FPCF's first four assessments while the remaining quarterly payments covered the fifth through the eighth assessments. The settlement agreement, however, clearly states that the payment schedule corresponds to the fifth through the eighth assessments.

We cannot determine, based upon the record before us, the amount of the payments made by petitioner to the FPCF, or the years to which these payments correspond whether they are taxable or tax-exempt years. Accordingly, we find that petitioner has failed to meet its burden of proof and is not entitled to a judgment as a matter of law with respect to the deductibility of payments it made to the FPCF.

## 3. Net Operating Loss

Petitioner contends that it sustained a net operating loss in the amount of $706,522 for taxable year 1983. Petitioner filed a Form 990, Return of Organization Exempt From Income Tax, rather than a Form 1120, Corporate Income Tax Return, with respect to 1983, according to petitioner, because at the time of the filing petitioner was recognized as a tax-exempt organization. Petitioner argues that had a Form 1120 been filed the $706,522 loss would have been shown as a net operating loss for taxable year 1983.

Petitioner contends that the alleged loss of $706,522 satisfies the definition of a net operating loss under section 172(c) and (d) as it is the amount by which its gross income in

1983 was exceeded by its allowable deductions for that year. Furthermore, argues petitioner, the fact that petitioner's 1983 taxable year is a closed year, i.e., a year for which neither a deficiency may be assessed nor a refund allowed because of the expiration of the limitations period under sections 6501 and 6511, does not preclude a determination that a net operating loss was sustained in 1983 which may be carried forward to subsequent years.

As the alleged net operating loss in taxable year 1983 results in part from payments made to the FPCF and in part from petitioner's failure to accurately report the sale price for the sale of its assets, we find that there exists a dispute as to material facts as to whether a net operating loss was in fact sustained in taxable year 1983. Moreover, there remains a dispute as to whether the sale price of $6,318,000 grossly understated the true fair market value of assets sold by petitioner. Accordingly, we find that petitioner has failed to meet its burden of proof and is not entitled to a judgment as a matter of law with respect to the alleged 1983 net operating loss.

To reflect the foregoing,

<u>An appropriate order
will be issued denying
petitioner's motion for
partial summary judgment.</u>